Argued and submitted October 28, 1998, affirmed August 4, 1999

# STATE OF OREGON,
*Appellant,*

*v.*

# TERRY ALLEN BEDEN,
*Respondent.*

## (96-1137; CA A99593)

986 P2d 94

Katherine H. Waldo, Assistant Attorney General, argued the cause for appellant. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Lawrence Matasar argued the cause and filed the brief for respondent.

Before Landau, Presiding Judge, and Deits, Chief Judge, and Wollheim, Judge.

WOLLHEIM, J.

**WOLLHEIM, J.**

The state seeks reversal of the trial court's pretrial order permitting defendant to introduce evidence pertaining to the alleged victim's past sexual abuse under OEC 412. We affirm.

Defendant is charged with sexual abuse in the first degree, ORS 163.427, and unlawful sexual penetration in the first degree, ORS 163.411, involving a 9-year-old child. The incident giving rise to the indictment occurred in October 1995, when defendant, a friend of the child's family, offered to drive the child from Oregon to her home in Washington. To facilitate an early morning departure, the child stayed overnight with defendant in his motel room, sharing the bed. The next day, the child reported to her foster mother that she awoke to find defendant licking his fingers and then touching her vaginal area. In a November 1995 taped interview with CARES Northwest Program[1] staff, the child further reported that after she awoke she got up from the bed, locked herself in the bathroom and started crying. She stated that defendant had told her that she was having a bad dream and that he slept the rest of the night on the couch. She also said that, during the next day's drive, defendant told her "that this was their secret." At trial, defendant would offer evidence that, just prior to waking up, the child called out "Bob," the name of her biological father, who had sexually abused her in the past.

In the CARES report, the interviewer recounted the child's explanation of what happened, including her premonition that abuse might occur:

> " 'We got to the hotel and ate popcorn and watched TV. He said, "Get your PJ's on." I thought he was going to touch my private.' I asked her why she thought he was going to touch her private and she said, 'Because when I was 5 years old, my real dad did. Then I brushed my teeth and went to bed. I woke up and he was touching my private.' "

---

[1] CARES (Child Abuse Response and Evaluation Service) Northwest Program at Legacy Emmanuel Hospital in Portland is a regional assessment center for abused or neglected children.

The child told CARES that her now-deceased biological father had sexually molested her. She reported that she had been sleeping in the same bed with her father and "woke up and found myself on top of Bob * * *. He had his private touching my private." The police report, including the written confession of her father, indicated that one alleged incident of abuse occurred in a motel room and another alleged incident included him licking his fingers and touching her genitals with his hand. The child received counseling as a result of that abuse.

Pursuant to OEC 412,[2] defendant filed a motion seeking to admit

"any and all evidence available concerning the prior sexual abuse of [the child] and the prior sexual knowledge of [the child] for the following reasons:

"1. At the request of [the child's foster] mother, defendant transported the girl from Oregon to Washington and stayed overnight at a motel. During that overnight stay the girl woke up in the middle of the night during a bad dream about being sexually abused.

"2. That bad dream became the basis of the accusations against defendant involving [the child]."

In particular, that evidence included details of the abuse committed by the child's father, the statements made by the child to CARES about it, her "premonition" of abuse, and the name that she called out in her sleep. Defendant theorizes that, given the similarity of her father's abuse and the abuse allegedly perpetrated by defendant, the past abuse caused her to have a premonition about defendant abusing her and

---

[2] OEC 412 provides, in part:

"(2) Notwithstanding any other provision of law, in a prosecution for a crime described in ORS 163.355 to 163.427, or in a prosecution for an attempt to commit such a crime, evidence of a victim's past sexual behavior other than reputation or opinion evidence is also not admissible, unless such evidence other than reputation or opinion evidence:

"* * * * *

"(b) Is evidence that:

"(A) Relates to the motive or bias of the alleged victim; or

"* * * * *

"(C) Is otherwise constitutionally required to be admitted."

caused her to dream the incident that she mistook for reality. Thus, the evidence of past sexual abuse relates to the child's motive for making the accusation. Unable to explore the likely cause of the dream, defendant argues, he would be prohibited from adequately presenting his theory of the case, a violation of the United States and Oregon Constitutions.[3]

At the pretrial hearing, the state argued that evidence of past sexual abuse was inadmissable "previous sexual behavior" because it was prejudicial to the child and violated OEC 412 and OEC 403. The state also argued that the evidence was not relevant to motive or bias and was not constitutionally required. The trial court disagreed, finding the evidence relevant, admissible as to motive, and not overly prejudicial to the child. It also concluded that the evidence was constitutionally required to enable defendant to develop and present his case.

■■ Pursuant to OEC 412(3)(c), the state appealed, seeking pretrial review of the trial court's interlocutory order admitting the evidence. We review the trial court's decision regarding the relevance of evidence for errors of law. *State v. Titus,* 328 Or 475, 481, 982 P2d 1133 (1999). We review the trial court's decision regarding whether relevant evidence should be excluded under OEC 403, due to undue prejudice, confusion or delay, for an abuse of discretion. *State v. Thompson,* 328 Or 248, 258, 971 P2d 879 (1999). We conclude that the trial court properly determined that the evidence was relevant and did not abuse its discretion in holding that it should be admitted at trial.

We first address the state's two relevancy arguments.[4] OEC 401 defines "relevant evidence" as "evidence

---

[3] Article I, section 11, of the Oregon Constitution, provides, in part:

"In all criminal prosecutions, the accused shall have the right to public trial by an impartial jury in the county in which the offense shall have been committed; to be heard by himself and counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof; to meet the witnesses face to face, and to have compulsory process for obtaining witnesses in his favor * * *."

The Sixth Amendment to the United States Constitution provides, in part:

"In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor * * *."

[4] OEC 412 admits only relevant evidence that also fits into its specific categories. Thus we are able to review the state's relevancy arguments that were preserved in that context.

having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The state's first OEC 412 objection is that defendant needed to present expert testimony establishing the relevance of the past sexual abuse evidence to defendant's theory of motive. Its second objection is that the past sexual abuse was not relevant as motive because it would not establish an "ill will" by the child toward defendant.

At the pretrial hearing, the prosecutor specifically conceded that defendant was free to introduce evidence about the nightmare, the dream utterance, and, thus, his theory of the child's motive. The state, therefore, did not object to the notion that a jury was competent to infer that a child could have a nightmare and mistake it for reality. However, the state argues that expert testimony is required to permit the jury to make the same inference where there is evidence of past sexual abuse. More precisely, the state argues that, in order for the past sexual abuse to be relevant to defendant's theory of motive, defendant must present expert testimony to establish that it is "more likely that a child will believe and report the sexual abuse occurring only in a dream as reality." The state contends, citing *State v. Milbradt,* 305 Or 621, 630-31, 756 P2d 620 (1988), that the evidence is "syndrome" evidence, requiring a scientific foundation under *State v. Brown,* 297 Or 404, 687 P2d 751 (1984). We disagree.

██ *Milbradt* concerned expert evidence about "how normal children *usually* react to sexual abuse." 305 Or at 630 (emphasis added). The state attempts to characterize defendant's offer as seeking to introduce the idea that sexual abuse victims are statistically more likely to *mistake* a dream for reality. That is not our understanding of defendant's theory. We understand defendant's theory to provide only a possible explanation of why, in this case, the child may have had a nightmare and mistaken it for reality. Expert testimony is needed *only* when an average juror would be unable to *understand* the issues without expert assistance, not simply because a juror has not experienced the circumstances. *Fieux v. Cardiovascular & Thoracic Clinic, P.C.,* 159 Or App 637, 642, 978 P2d 429 (1999) (quoting *McKee Electric Co. v. Carson Oil Co.,* 301 Or 339, 350, 723 P2d 288 (1986)). Here, defendant offers the evidence of the past abuse, the child's

premonition of abuse, and her dream utterance. Like the trial court, we think that it is not beyond an average juror's understanding that the presence of a traumatic emotional event *could*—not would, must, usually, or always—produce vivid and realistic nightmares about that event. The state even concedes that point. Unlike the state, however, we do not think it is a major analytical or inferential step, outside a jury's competence, to decide that a child might also mistake those nightmares for reality.[5]

■    Importantly, to support that inference, defendant would offer the details of the past abuse, the dream utterance, and the child's premonition about sexual abuse due to her father's abuse. The state argues that the evidence of the child's past sexual abuse is not relevant because it is not similar enough to the alleged abuse here to substantiate defendant's theory of motive. But the rule regarding relevancy establishes a "very low threshold" for admission of evidence. *State v. Hampton,* 317 Or 251, 255 n 8, 855 P2d 621 (1993). "Evidence is relevant so long as the inference desired by the proponent is reasonable, even if the evidence also could support a contradictory inference." *Titus,* 328 Or at 481. The police report and the written admission of the father, although redacted in part, provide enough information to gather that the child was abused while sleeping in the same bed with her father and that her father licked his fingers and touched her vaginal area. We think that report is substantially similar in detail and tends to make defendant's theory of a copy-cat dream more probable than without the report. It is, therefore, relevant; combined with defendant's two other offers—the utterance and the premonition—defendant has presented evidence sufficient to support a jury's inference, after hearing the child's testimony that she did not have a

---

[5] We question whether the jury would even be permitted to make the inferences defendant will ask it to make without the evidence of past sexual abuse. For example, in *State v. Presley,* 108 Or App 149, 814 P2d 550 (1991), we held that a child victim's dream utterance was not admissible. The state sought to have the jury infer the content of a dream from that utterance and, from that, further speculate that the father had, in reality, sexually abused the child victim. We held that the utterance could not support the factual inferences that the jury was permitted to make. *Id.* at 152. In any event, the state may not argue this theory because it specifically conceded that the jury was competent to infer that, in general, a child could have a nightmare and mistake it for reality.

nightmare, that the child mistakenly accused defendant based on a nightmare. *See Fieux,* 159 Or App at 645-46.

■■ We now turn to the state's second OEC 412 objection that defendant's theory does not establish motive. There is a three-step analysis under OEC 412(1) and (2). The trial court

> "[f]irst, * * * must determine whether the evidence concerns a victim's 'past sexual behavior.' * * * Second, if the evidence does concern past sexual behavior, and is offered in the form of opinion or reputation, the court must deny its admission under OEC 412(1). If it is offered in some other form, then the court must determine whether the purpose of the offer fits within one of the exceptions in OEC 412(2)(b)(A), (B) or (C). * * * Third, if it does fit within an exception, the court must balance the probative value of the evidence against its prejudicial effect." *State v. Wright,* 97 Or App 401, 405, 776 P2d 1294, *rev den* 308 Or 593 (1989).

Defendant acknowledges that the past sexual abuse perpetrated on the child is considered "past sexual behavior" of that victim and thus falls within the ambit of OEC 412. *See id.* at 406. Defendant, however, argues that the evidence is both relevant and admissible under OEC 412. Specifically, he argues that the evidence goes to motive as required under OEC 412(2)(b)(A) as well as under the Oregon Constitution. The state argues that defendant's theory does not establish either a particularized motive to accuse this particular defendant falsely or a bias against this particular defendant. "[M]otive or bias in the context of OEC 412 denotes a particularized motive or bias against the person offering the evidence." *Id.* at 407. Evidence that might show a generalized bias or motive is not sufficient. *State v. Gilliland,* 136 Or App 580, 586, 902 P2d 616 (1995); *see also State v. Bass,* 69 Or App 166, 169, 683 P2d 1040, *rev den* 298 Or 238 (1984). The essence of the requirement is that there be a "logical connection between the * * * [defendant's proffered evidence] and any motive to accuse this defendant in this case." *State v. Thompson,* 131 Or App 230, 236, 884 P2d 574 (1994), *rev den* 320 Or 508 (1995).

The state appears to interpret that rule to require one to have a personal prejudice, or bias, against a defendant that motivates a false accusation against that defendant. *See*

*State v. Wattenbarger,* 97 Or App 414, 418, 776 P2d 1292, *rev den* 308 Or 331 (1989) (where evidence of a general bias against males was held not admissible); *Wright,* 97 Or App at 407. The state, however, confuses the proper inquiry. Defendant does not claim that the child is biased against him or falsely accusing him in bad faith, nor must he. OEC 412 permits evidence of "motive *or* bias." (Emphasis added.) Defendant is seeking to admit evidence only of motive. The plain meaning of motive does not require an ill will. Rather, it is:

> "**a**: something within a person (as need, idea, organic state, or emotion) that incites him to action. * * * **b**: the consideration or object influencing a choice or prompting an action." *Webster's Third New Int'l Dictionary*, 1475 (unabridged ed 1993).

This case is similar to *Hampton,* where the Supreme Court held admissible evidence of the defendant's parole status in a prosecution for assault against a police officer. There, "a rational juror could reasonably infer that defendant sought to get away from the officer because he knew outstanding charges were pending against him," that his ability to remain on parole, rather than be incarcerated, was in jeopardy, and "that that was his motive, the reason he vigorously fought to try to get away." *Id.* at 257-58. The logical connection there was not whether the defendant carried ill will or a personal vendetta but how the defendant's parole status gave him a "special reason" to assault a police officer. *Id.* at 258. Here, the evidence does not establish that the child felt ill will against defendant, but it does support an inference that defendant, being an adult male *sleeping in the same bed* with the child, gave her a "special reason" to accuse him, perhaps falsely, but in good faith. Thus, defendant argues that the child's previous traumatic episodes produced an emotional impetus, in this similar circumstance, to accuse defendant mistakenly, and thus falsely. We agree with the trial court that the evidence of the child's past sexual abuse provides a basis from which a jury could infer her motive falsely to accuse defendant of sexual abuse.

Defendant also argues an alternative ground for admission, namely that the evidence is constitutionally required. Because we agree that the evidence is admissible

under OEC 412(2)(b)(A), relating to motive, it is not necessary to address defendant's constitutional arguments.

■    Last, we address the state's argument that the evidence of past sexual abuse should have been excluded because the probative effect of that evidence is outweighed by "the danger of unfair prejudice." OEC 403; OEC 412(3)(c). One of the principal purposes of OEC 412 is to protect against unfair prejudice. It is intended "to protect victims of sexual crimes from the degrading and embarrassing disclosure of intimate details about their private lives" that might provide an improper basis for a juror to weigh the credibility of a victim-witness or for making a decision in the case. *Thompson,* 131 Or App at 234 (quoting Legislative Commentary to Rule 412, *reprinted in* Laird C. Kirkpatrick, *Oregon Evidence,* 202 (2d ed 1989)).

The trial court concluded that the evidence was necessary to enable defendant to present his theory of motive in the case. It also concluded that the three pieces *combined,* relating to the past sexual abuse (the details of the abuse, the premonition of abuse, and the dream utterance), are sufficiently probative of his theory. *See Hampton,* 317 Or at 260 (determining whether the trial court considered the need for the evidence, the strength of the evidence, and the quantum of probative value of the evidence).

Next, the trial court weighed the risks of unfair prejudice. It concluded that using the evidence to further defendant's theory of an accusation based on a good-faith, honest mistake is not directed at tarnishing the child's character. Indeed, the evidence does not tend to paint the child victim as a liar, malicious, or as an irrational or hysterical person. Rather, the court considered the evidence as being more neutral—a very traumatic episode from the child's past that the jury might infer caused her to make a mistake under the particular circumstances. Therefore, the trial court concluded that defendant's introduction of the evidence did not implicate the wrongs against which the statute was designed to protect. We agree with the trial court's interpretation of OEC 412 and conclude that it did not abuse its discretion in admitting the evidence.

Affirmed.