Argued and submitted March 31, 1999, reversed and remanded in part; otherwise affirmed December 6, 2000

STATE OF OREGON,
*Respondent,*

*v.*

AHMED MUYINGO,
aka Muyingo Ahmed Muyingo,
*Appellant.*

(951038342; CA A94292)

15 P3d 83

Peter Gartlan, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender. On the supplemental brief was Ahmed Muyingo *pro se.*

Kaye E. Sunderland, Assistant Attorney General, argued the cause for respondent. With her on the briefs were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Edmonds, Presiding Judge, and Deits, Chief Judge, and Armstrong, Judge.

EDMONDS, P. J.

Deits, C. J., dissenting.

## EDMONDS, P. J.

Defendant appeals from his conviction on 29 counts of a 49 count indictment, assigning error to a pretrial order denying his motion to admit evidence of a victim's past sexual behavior under OEC 412. He was convicted in two trials of various crimes involving his daughters.[1] He appeals from his

---

[1] The legislature amended OEC 412 during the 1999 legislative session. Or Laws 1999, ch 949, § 3. However, those amendments do not affect the disposition of this case. All references to OEC 412 are to the 1997 version, which provided:

"(1) Notwithstanding any other provision of law, in a prosecution for a crime described in ORS 163.355 to 163.427, or in a prosecution for an attempt to commit such a crime, reputation or opinion evidence of the past sexual behavior of an alleged victim of such crime is not admissible.

"(2) Notwithstanding any other provision of law, in a prosecution for a crime described in ORS 163.355 to 163.427, or in a prosecution for an attempt to commit such a crime, evidence of a victim's past sexual behavior other than reputation or opinion evidence is also not admissible, unless such evidence other than reputation or opinion evidence:

"(a) Is admitted in accordance with subsection (3)(a) and (b) of this section; and

"(b) Is evidence that:

"(A) Relates to the motive or bias of the alleged victim; or

"(B) Is necessary to rebut or explain scientific or medical evidence offered by the state; or

"(C) Is otherwise constitutionally required to be admitted.

"(3)(a) If the person accused of committing rape, sodomy or sexual abuse or attempted rape, sodomy or sexual abuse intends to offer under subsection (2) of this section evidence of specific instances of the alleged victim's past sexual behavior, the accused shall make a written motion to offer such evidence not later than 15 days before the date on which the trial in which such evidence is to be offered is scheduled to begin, except that the court may allow the motion to be made at a later date, including during trial, if the court determines either that the evidence is newly discovered and could not have been obtained earlier through the exercise of due diligence or that the issue to which such evidence relates has newly arisen in the case. Any motion made under this paragraph shall be served on all other parties, and on the alleged victim through the office of the prosecutor.

"(b) The motion described in paragraph (a) of this subsection shall be accompanied by a written offer of proof. If the court determines that the offer of proof contains evidence described in subsection (2) of this section, the court shall order a hearing in camera to determine if such evidence is admissible. At such hearing the parties may call witnesses, including the alleged victim, and offer relevant evidence. Notwithstanding ORS 40.030(2), if the relevancy of the evidence that the accused seeks to offer in the trial depends upon the fulfillment of a condition of fact, the court, at the hearing in camera or at a subsequent hearing in camera scheduled for such purpose, shall accept evidence on the issue of whether such condition of fact is fulfilled and shall determine such issue.

convictions on 12 counts of criminal mistreatment I, ORS 163.205, two counts of rape II, ORS 163.365, two counts of rape III, ORS 163.355, six counts of sexual abuse I, ORS 163.427, six counts of sexual abuse III, ORS 163.415, involving victim S, and one count of unlawful sexual penetration, ORS 163.411, involving victim J. We reverse, in part.

At defendant's first trial before a jury, the court granted his motion for judgment of acquittal on four counts, and the jury found him guilty of 13 counts and not guilty of two counts. The jury was unable to reach a verdict on the remaining 30 counts. Defendant's second trial was before the court on the remaining 30 counts. As a result of that trial, six counts were dismissed, and the court found him guilty of 16 additional counts and not guilty of eight counts.

Before his first trial, defendant timely notified the court and the state, as required by OEC 412(3)(a), that he intended to offer evidence of the "past sexual behavior" of S in order to rebut or explain medical evidence that he expected the state to present at trial. As required by OEC 412, the trial court held a hearing on defendant's motion before trial. The court subsequently denied defendant's motion and excluded the evidence.

On appeal, defendant asserts that the trial court erred when it denied defendant's motion to introduce evidence of S's sexual history. At the hearing on defendant's motion, defendant presented only two witnesses: himself and his sister, Samantha.[2] Samantha testified that S lived with

---

"(c) If the court determines on the basis of the hearing described in paragraph (b) of this subsection that the evidence the accused seeks to offer is relevant and that the probative value of such evidence outweighs the danger of unfair prejudice, such evidence shall be admissible in the trial to the extent an order made by the court specifies evidence that may be offered and areas with respect to which the alleged victim may be examined or cross-examined. An order admitting evidence under this subsection may be appealed by the government before trial.

"(4) For purposes of this section:

"(a) 'In camera' means out of the presence of the public and the jury; and;

"(b) 'Past sexual behavior' means sexual behavior other than the sexual behavior with respect to which rape, sodomy or sexual abuse or attempted rape, sodomy or sexual abuse is alleged."

[2] A third witness was not present for the hearing, and the court denied defendant's request to have her testimony admitted either telephonically or through the hearsay testimony of third parties. Defendant does not assign error to that ruling.

Samantha and Samantha's family in Uganda for approximately nine years, starting when S was about five years old and Samantha was ten. At that time, defendant was away fighting in the military. Samantha stated that on one occasion, S ran away from home to avoid being punished for skipping school. According to Samantha, S was gone all night and when she returned she said that "she had spent the night in army men's house, the soldier's house. * * * [T]hat [the soldiers] had slept on the top of her." Samantha explained that "slept on top of you" was a common expression used in Uganda to indicate having had sex. Samantha also testified that her mother then took S into the bedroom "to check her" according to their cultural custom.[3] After "checking" S, Samantha's mother was "absolutely mad" and beat S. Samantha took this to mean that her mother's "checking" had revealed that S was no longer a virgin. Samantha also testified that on another occasion, she came home from boarding school and heard that four members of her family, including S, had been raped.

Defendant testified that in 1986, while he was fighting in the Ugandan civil war, he was told that his daughter S, along with other members of his family, had been raped by soldiers. Defendant never discussed with S any of the rapes alleged to have happened in Uganda. He did testify that, in 1992, another of his sisters, Madiina, called him from Kenya shortly after he and his children had moved to Portland, and told him that he should "check" S and then call Madiina back and that she would explain why she had wanted him to "check" S. Defendant then "checked" S and her sister and decided that, because of differences between the two sisters, S had been "sexually penetrated." When he called Madiina back, she explained that while defendant and his family were living in Kenya in 1991, S had told her that, at various times, three men and a boy had raped her. Defendant testified that after talking to Madiina, he discussed these alleged rapes with S. He stated that she described to him when and how the rapes in Kenya had occurred. Defendant also testified,

---

[3] According to Ugandan custom, certain relatives of unmarried girls are charged with periodically examining the girls' vaginas for signs of sexual penetration. Apparently, this custom involves only a visual examination.

however, that, although he had concerns about the boy, he did not believe that S had been raped by the three men. At the OEC 412 hearing, defendant could have called S as a witness, but he did not do so. OEC 412(3)(b).

Following the testimony of defendant and his sister, the trial court denied defendant's motion. The court ruled:

"It appears to me that this tenuous past sexual behavior, even if—even if believed—moreover it's during circumstances of '91 to '92 in which it was in Uganda and in Kenya, and certainly has been said as to the approximate time here in the United States, Portland, Oregon.

"I can't find that a significant basis for establishing a motive of bias, particularly as to this Defendant. And its probative value is clearly not outweighed by the prejudicial aspect of this case. Certainly enough of the case can be brought in order to establish his defense short of the evidence that's asked to be admitted in this case."[4]

At trial, S testified that she had been sexually assaulted by defendant. Defendant also testified, denying that the misconduct had occurred, and he offered evidence of inconsistent statements by S. The state also offered the testimony of Patricia Reilly, a pediatric nurse petitioner who had conducted a physical examination of S. Reilly testified that S had a reduced amount of hymenal tissue consistent with a penetrating injury to her vagina. In closing argument to the court, the prosecutor argued,

"And finally, Your Honor, I have mentioned the physical evidence and I'd like to reiterate it at this time. While you have no reason to disbelieve the victim, any minute doubts that could possibly be raised are completely resolved by the physical evidence. There is simply nothing to explain other than exactly what the victim told you about why she has virtually no hymen and that the condition of her vagina is that of someone who has been repeatedly sexually penetrated. That's undisputed and that's unexplained and it's exactly consistent with what the victim told you."

---

[1] The court stated "its probative value is clearly not outweighed by the prejudicial aspect of this case." However, read in context it is clear to us, and defendant does not argue otherwise, that the court meant that the probative value *was* clearly outweighed by the prejudicial aspect.

In *State v. Wright*, 97 Or App 401, 405, 776 P2d 1294, *rev den* 308 Or 593 (1989), we articulated a three-step analysis that a court must apply to determine whether evidence should be admitted under OEC 412:

> "First, it must determine whether the evidence concerns a victim's 'past sexual behavior.' If it does not, it is not appropriate for it to make further inquiry under OEC 412. Second, if the evidence does concern past sexual behavior, and is offered in the form of opinion or reputation, the court must deny its admission under OEC 412(1). If it is offered in some other form, then the court must determine whether the purpose of the offer fits within one of the exceptions in OEC 412(2)(b)(A), (B) or (C). If it does not, then the court may not admit the evidence. Third, if it does fit within an exception, the court must balance the probative value of the evidence against its prejudicial effect."

Under that framework, we first consider whether defendant's evidence concerns the past sexual behavior of S.

> " '[P]ast sexual behavior' means a volitional or non-volitional physical act that the victim has performed for the purpose of the sexual stimulation or gratification of either the victim or another person or an act that is sexual intercourse, deviate sexual intercourse or sexual contact, or an attempt to engage in such an act, between the victim and another person." *Wright*, 97 Or App at 406.

We hold that the evidence that S was raped in Uganda and Kenya is evidence of past sexual behavior within the foregoing definition.

■    The second issue is whether the proffered evidence fits within one of the exceptions in OEC 412(2)(b)(A), (B) or (C). According to the state, the proffered evidence fails on that ground. It argues that

> "None of the information regarding [S]'s past sexual behavior was based on the witnesses' first-hand knowledge. Rather, it consisted exclusively of hearsay and, with respect to some details, double hearsay. Additionally, the testimony that [S] had made the statements came from two witnesses who had every reason to fabricate statements by [S]. Even if their testimony about what [S] said to them were to be believed, it could not prove that [S] actually had been

raped in the past, but only that [S] had *said* that had occurred." (Emphasis in original; footnotes omitted.)

Defendant argues that the evidence is admissible "to rebut or explain scientific or medical evidence" under OEC 412(2)(b)(B). We agree that the evidence is relevant to rebut the state's argument that the physical evidence corroborates S's testimony that she was sexually assaulted by defendant. *State v. Nab*, 245 Or 454, 458, 421 P2d 388 (1967). As to the state's arguments, the fact that S reported that she had been raped is evidence that she had been raped. Finally, although the state argues that the evidence is inadmissible hearsay, the state did not make that argument to the trial court at the OEC 412 hearing. If it had, it is possible that defendant would have called S as a witness. Because the evidence is relevant to controvert the state's physical evidence, the second element for admissibility under OEC 412 is satisfied.

██  The final step under OEC 412 requires the court to balance the probative value of the proffered evidence against its prejudicial effect. We review the trial court's ruling on that issue for an abuse of discretion. *State v. Wattenbarger*, 97 Or App 414, 418, 776 P2d 1292, *rev den* 308 Or 331 (1989). As noted earlier, the trial court weighed the probative value of the proffered evidence against its prejudicial effect and concluded that, even if the testimony of defendant and his sister were credible, its probative value was exceeded by its prejudicial effect. In the context of the rule, "prejudicial effect" means "unfair prejudice." "Unfair prejudice" is the kind of prejudice that would cause a factfinder to decide the case on an improper basis.

> "OEC 412 is to protect against unfair prejudice. It is intended 'to protect victims of sexual crimes from the degrading and embarrassing disclosure of intimate details about their private lives' that might provide an improper basis for a juror to weigh the credibility of a victim-witness or for making a decision in the case." *State v. Beden*, 162 Or App 178, 187, 986 P2d 94 (1999) (quoting Legislative Commentary to Rule 412, *reprinted in* Laird C. Kirkpatrick, *Oregon Evidence*, 202 (2d ed 1989)).

In its analysis, the trial court considered the probative value of the evidence to be tenuous because it concerned

events that were remote in time and place. The hearing on this matter occurred in 1996. The proffered evidence is about events in 1986 to 1991. We are not persuaded that the lapse of time is material under the circumstances of this case. The events that allegedly occurred are significant in the life of any person, and their probative value to the determination of this case depends not on a recollection of their underlying details, but on whether they in fact occurred. Any event, no matter when it occurred, that contributed to S's physical condition has probative value. Similarly, we perceive no reason why admissibility is defeated because the events happened in Kenya and Uganda. Moreover, the evidence is not confusing, nor would it unduly distract the factfinder and cause a decision on an improper basis. Rather, it is highly probative to controvert the state's argument that any question about the credibility of the victim is resolved by the physical evidence. As defendant asserts, the evidence falls squarely within an expressed exception to OEC 412's exclusionary authority because it rebuts the physical evidence offered by the state.

We are also mindful that the exclusion of the evidence could implicate defendant's right to present a defense under Article I, section 11, of the Oregon Constitution, and the Sixth and Fourteenth Amendments to the United States Constitution. Defendant argues that the court's ruling denies him the opportunity to present an alternative to the state's theory that he caused S's physical condition. In *State v. Beeler*, 166 Or App 275, 999 P2d 497, *rev den* 331 Or 244 (2000), we addressed a similar question. We explained that in determining whether evidence must be admitted because excluding it would infringe on a defendant's constitutional right to present exculpatory evidence, "the constitutional issue reduces to a weighing of the state's interest in excluding [the defendant's evidence against the value of the evidence to the defense]." 166 Or App at 283-84. Here, the state's interest in excluding evidence is found in the objective of OEC 412 to "protect victims of sexual crimes from degrading and embarrassing disclosures of intimate details about their personal lives thereby encouraging victims to report and assist in the prosecution of the crime." We are sensitive to the need to protect sexual misconduct victims from being required to disclose unrelated intimate details of their lives in the course of

a criminal prosecution. However, the state has put at issue the victim's physical condition. Thus, the value of the proffered evidence is in its potential ability to rebut an argument that otherwise could lead to the conviction of defendant and to the deprivation of his liberty. After weighing the competing arguments for admissibility under the third step of the analysis, we conclude that the probative value of the proffered evidence is so great that the trial court exceeded the bounds of its discretion when it excluded the evidence.

The dissent places emphasis on the fact that defendant expressed his disbelief that S was raped in Kenya. We do not perceive how that evidence prevents admissibility under OEC 412. The weight to be given to S's reports about the rapes, if any, is for the jury, not defendant. Moreover, the dissent's contention that evidence that S had been raped in the past would cause the jury to base its decision on a belief that she consented to those acts is unlikely. S was 15 years old at the time of the trial in 1996. Her family moved to Portland in 1992 after spending a year together in Kenya. Accordingly, the incidents in Uganda would have occurred when S was nine years old or younger. Under those circumstances it is difficult to understand how a jury could be swayed by the inference that the dissent asserts. The most compelling fact that the dissent refuses to recognize is that the state used S's physical condition as the centerpiece of its argument to the jury after having successfully excluded relevant evidence of what events could have caused her condition. Accordingly, we hold that the trial court erred when it excluded the proffered evidence under OEC 412.

■ Finally, the state argues, and the dissent agrees, that if the proffered evidence should have been admitted, then only the convictions on rape counts, counts 20, 21, 24 and 25 should be reversed, but not the other sexual misconduct convictions involving S. They reason that the latter counts do not involve penetration, and therefore, the evidence of the prior rapes could not have affected the jury's verdicts on the counts that did not involve penetration. The problem with that argument is that the state relied on the absence of the proffered evidence to bolster S's credibility in general. Essentially, the jury was required to decide whether S or defendant was telling the truth based on their individual

testimony. Because of its earlier successful motion under OEC 412, the state was able to argue to the factfinder that S's physical condition at the time of trial refuted defendant's testimony that he had not raped or sexually abused S. It would naturally follow that if the factfinder found S's testimony that she had been raped by defendant credible, it would also find her testimony that he had sexually abused her credible. Because the excluded evidence bears directly on the credibility of S, we agree with defendant's position that the exclusion of the evidence was error as to all of the counts involving defendant's alleged sexual misconduct with S. On the other hand, we disagree with defendant that the trial court's ruling adversely affected the verdict on count 48, because it involved a different victim.

Defendant's other arguments do not require discussion.

Convictions on counts 20, 21, 24, 25, 28, 29, 32, 33, 36, 37, 38, 39, 40, 41, 42, and 43 reversed and remanded; otherwise affirmed.

**DEITS, C. J.,** dissenting.

The issue in this case is whether the trial court erred in denying defendant's OEC 412 motion to admit evidence of a victim's past sexual behavior. The majority correctly states that the standard of decision for this inquiry is the three-part analysis set out in *State v. Wright,* 97 Or App 401, 776 P2d 1294, *rev den* 308 Or 593 (1989). I agree with the majority that the evidence that defendant sought to have admitted concerned the victim's "past sexual behavior." OEC 412(2); *Wright,* 97 Or App at 405. I also agree with the majority's conclusion that the evidence was necessary to rebut or explain medical evidence offered by the state and was, accordingly, in one of the categories of past sexual behavior evidence made admissible under OEC 412. OEC 412(2)(b)(B); *Wright,* 97 Or App at 405. I take issue, however, with the majority's treatment of the third part of the analysis under OEC 412 relating to balancing the probative value of the evidence against its prejudicial effect. I believe that the trial court was correct in concluding that the probative value of the evidence did not outweigh the danger of unfair prejudice. For the reasons that I will discuss, in my opinion, the trial

court did not err in refusing to admit the disputed evidence. Accordingly, I respectfully dissent.

OEC 412 is a rule of relevancy that is specifically applicable to determinations regarding the admissibility of evidence of the past sexual behavior of victims of certain sex crimes. *See State ex rel Davey v. Frankel*, 312 Or 286, 290, 823 P2d 394 (1991) (OEC 412 "defin[es] the scope of relevant admissible evidence narrowly * * *."). Under OEC 412, evidence of prior sexual behavior of a victim is not relevant and not admissible in prosecutions for certain sex crimes, unless it fits within one of the statutory exceptions. *See State v. Lajoie*, 316 Or 63, 68, 849 P2d 479 (1993) ("OEC 412 is a blanket limitation on the introduction of evidence of an alleged victim's past sexual behavior in a prosecution for a sexual crime.") (internal quotation marks omitted). Further, even if the evidence is relevant under one of the OEC 412 exceptions, it is not admissible unless its "probative value * * * outweighs the danger of unfair prejudice." OEC 412(4)(c).

As noted above, OEC 412 is implicated only when a party seeks admission of "evidence of a victim's past sexual behavior." OEC 412(1), (2). As a threshold matter, then, when faced with an OEC 412 motion, a court must determine whether the evidence concerns a victim's past sexual behavior. *State v. Cervantes*, 130 Or App 147, 150 n 1, 881 P2d 151 (1994); *Wright*, 97 Or App at 417. As noted above, I agree with the majority that the evidence that defendant sought to have admitted was evidence of S's past sexual behavior.[1] I

---

[1] According to the state, the trial court concluded that the purported behavior did not in fact occur and, accordingly, the trial court correctly excluded the evidence on that basis. The state relies on OEC 412(4)(b), which requires the trial court to determine "condition[s] of fact." In *State v. Beeler*, 166 Or App 275, 280-81, 999 P2d 497, *rev den* 331 Or 244 (2000), this court held that, under OEC 412(4)(b), "it was error for the trial court to exclude the state's evidence and to order admission of defendant's evidence without making a determination regarding the complainant's conduct." *Id.* at 281. In this case, contrary to the state's assertion, the trial court did not explicitly make that determination. Instead, the trial court concluded that, *even if the purported sexual behavior had occurred*, it would not be admissible. Accordingly, under *Beeler*, a remand to the trial court might be necessary to allow the trial court to make that factual determination in the first instance. However, because I would conclude that, in any event, the evidence was properly excluded and would, therefore, affirm the trial court, under my analysis a remand would not be required. *See Beeler*, 166 Or App at 281-85 (where trial court wrongly admitted evidence as a matter of law under OEC 412, court reversed and did not remand for a determination of whether purported evidence in fact occurred).

also agree with the majority that the evidence that defendant sought to have admitted was relevant "to rebut or explain * * * medical evidence" under OEC 412(2)(b)(B). 171 Or App at 225.

My disagreement with the majority centers around its conclusion that the trial court erred in concluding, under OEC 412(4)(c), that the probative value of the evidence did not outweigh its prejudicial effect. As the majority correctly observes, review of the trial court's conclusion regarding the balancing of the probative versus the prejudicial effect of this evidence is for abuse of discretion. 171 Or App at 225, *citing State v. Wattenbarger*, 97 Or App 414, 418, 776 P2d 1292, *rev den* 308 Or 331 (1989). *See also State v. Williams*, 313 Or 19, 29-30, 828 P2d 1006, *cert den sub nom Williams v. Oregon*, 506 US 858 (1992) (reviewing ruling on probative versus prejudicial value under OEC 403 for abuse of discretion). Our task on review of rulings like this one is limited:

> "We simply determine whether, on the facts of the particular case, the trial court's ruling was within the reasonable or permissible range. We need not determine whether [the] ruling was the only one possible. It may be that the record will support either admission or exclusion; if so, the trial court's ruling will be affirmed, regardless of which solution we would prefer." *Carter v. Moberly*, 263 Or 193, 201, 501 P2d 1276 (1972).

In my opinion, the trial court did not abuse its discretion in this case by concluding that the probative value of defendant's proffered evidence was outweighed by its prejudicial effect, and we should defer to that decision.

The majority concludes that "the probative value of the proffered evidence is so great that the trial court exceeded the bounds of its discretion" by excluding it. 171 Or App at 227. According to the majority, I "refuse[ ] to recognize * * * that the state used S's physical condition as the centerpiece of its argument to the jury after having successfully excluded relevant evidence of what events could have caused her condition." 171 Or App at 227. I acknowledge that the proffered evidence undoubtedly had *some* logically probative value. However, the legislature has directed that such evidence be "necessary"—and hence highly logically probative—in order

to be admissible at all under OEC 412(2)(b)(B), the exception applicable here. Accordingly, concluding that the proffered evidence is admissible under that exception requires a determination that the evidence has a high degree of logical probative value.[2]

That determination does not, however, end the matter. Even if the proffered evidence has probative value, the legislature has expressed the intention that the evidence still should be excluded unless that probative value outweighs the danger of unfair prejudice. The trial court concluded that it did not and, as noted above, I would hold that that conclusion was not an abuse of discretion.

Evidence is unfairly prejudicial "if it appeals to the preferences of the trier of fact for reasons that are unrelated to the power of the evidence to establish a material fact." *State v. Barone*, 328 Or 68, 87, 969 P2d 1013 (1998). The majority states that "the evidence * * * would [not] unduly distract the factfinder and cause a decision on an improper basis." 171 Or App at 226. I disagree. Evidence that S had been sexually active in other contexts could well have appealed to the factfinder on a basis unrelated to the power of that evidence to establish that there was another explanation for her physical condition. The legislature has acknowledged as much in commenting on why it enacted OEC 412: "to protect victims of sexual crimes from the degrading and

---

[2] I agree with the trial court's assessment that the *practical* probative value of the proffered evidence was undermined by several factors. The evidence concerned events remote in time and place. There was no direct evidence of S's sexual behavior. No witness testified from his or her own personal knowledge that S had engaged in sexual behavior. Defendant, in fact, testified at the OEC 412 hearing that he did not believe S was raped by the three men in Kenya. I agree with the majority's suggestion that defendant's disbelief of the reports of rape does not "prevent" the admissibility of the evidence. 171 Or App at 227. However, defendant's disbelief detracts from the probative value of the proffered evidence. Further, defendant could have called S as a witness at the hearing to testify as to the events, but he chose not to do so. In light of those flaws, I would agree with the trial court that the probative value of the evidence was relatively slight, not "great," as the majority determines. *Id.* at 227. See Legislative Commentary to OEC 412, *reprinted in* Kirkpatrick, *Oregon Evidence*, 195 (3d ed 1996) ("In determining the admissibility of evidence, the court should consider * * * the amount of time that has elapsed between the alleged prior act and the act charged in the prosecution. The greater the lapse of time, the less likely it is that the evidence will be admitted.").

embarrassing disclosure of intimate details about their private lives." Legislative Commentary to OEC 412, *reprinted in* Kirkpatrick, *Oregon Evidence* 194 (3d ed 1996). *See also State v. Beden*, 162 Or App 178, 187, 986 P2d 94 (1999) (disclosure of those details might provide an improper basis for a juror to assess the credibility of a victim-witness or to decide the case). In particular, here, at least some of defendant's proffered evidence—namely Samantha's testimony that S ran away from home and had "spent the night in army men's house" where soldiers "slept on top" of S and that, after that incident, S started to be sexually active and "slept with other little boys"—could have led the jury to speculate that S had consented to prior sexual activity and to base its decision on an improper view about S's character because of that activity. The majority states that, given S's extreme youth at the time, her consent is unlikely. Although I agree, I also recognize that the proffered evidence could nevertheless allow jurors to draw an inference of consent, which would be even more unfairly prejudicial in light of her extreme youth. That is exactly the type of speculation that rape-shield laws are designed to protect against.

In any event, even if S's purported sexual behavior were nonconsensual, that does not mean that hearing it could not have caused the jury to base its decision on a improper basis. Victims of sexual assault still are often seen as blameworthy. *See Bloch v. Ribar*, 156 F3d 673, 685 (6th Cir 1998) ("[A] historic social stigma has attached to victims of sexual violence. In particular a tradition of 'blaming the victim' of sexual violence sets these victims apart from those of other violent crimes."); Paul S. Grobman, *The Constitutionality of Statutorily Restricting Public Access to Judicial Proceedings: The Case of the Rape Shield Mandatory Disclosure Provision*, 66 Boston Univ L Rev 271, 275 (1986) (discussing public tendency to believe that rape victims "asked for it"). In fact, testimony in this case demonstrates the double standard that still operates against victims of sexual abuse. Samantha's sister testified that, after "checking" S for signs of penetration after S returned from the soldiers' house, S's mother was "absolutely mad" and beat S. Whether or not S consented to the conduct, her mother believed that she should be punished for no longer being a virgin. Similar prejudice against S could

easily have arisen in the minds of the jurors based on the irrational, but still active, belief that victims of sexual abuse are in some way responsible for the abuse.

Although the majority might have decided this question differently in the first instance, that does not entitle it to substitute its judgment for that of the trial court. I would conclude that the trial court did not abuse its discretion in excluding the evidence of the purported "past sexual behavior" of S.

I also do not agree with the majority that, under our analysis in *State v. Beeler*, 166 Or App 275, 999 P2d 497 (2000), defendant's right to present a defense or to confront witnesses under Article I, section 11, of the Oregon Constitution,[3] and the Sixth and Fourteenth Amendments to the United States Constitution[4] was infringed upon. In our decision in *Beeler,* we addressed a similar question. We explained that, in determining whether evidence must be admitted because excluding it would infringe on a defendant's constitutional rights to confront witnesses and to present exculpatory evidence, "the constitutional issue reduces to a weighing of the state's interest in excluding [the] defendant's evidence against the value of that evidence to the defense." *Beeler*, 166 Or App at 283-84. As we stated in *Beeler,* the state's interest in excluding evidence of this nature is to carry out the objective of OEC 412 to "protect victims of sexual crimes from degrading and embarrassing disclosure of intimate details about their personal lives thereby encourag[ing] victims to report and assist in the prosecution of the crime." *Id.* at 283 (internal quotation marks omitted). There is no question that

---

[3] Article I, section 11, of the Oregon Constitution, provides, in part:

"In all criminal prosecutions, the accused shall have the right * * * to be heard by himself and counsel; * * * to meet the witnesses face to face, and to have compulsory process for obtaining witnesses in his favor[.]"

[4] The Sixth Amendment to the United States Constitution, provides, in part:

"In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor[.]"

The Fourteenth Amendment provides, in part:

"[N]or shall any State deprive any person of life, liberty, or property, without due process of law[.]"

the admission of the proffered evidence here would undermine that interest of the state, because it would disclose intimate and embarrassing details of the victim's personal life.

In addition, as discussed above, the value of the evidence that defendant seeks to offer is tenuous. The evidence concerns events that occurred some time before the alleged events on which the criminal charges here were based and consists of second- and third-hand accounts of what happened. Further, even defendant himself testified that he did not believe that some of the events occurred. The value of this evidence to defendant was further reduced because he was allowed to present evidence that supported an alternative theory that explained the state's physical evidence. Defendant presented evidence that he had "checked" S, in accordance with Ugandan custom, when he suspected that she had engaged in sexual intercourse with a boyfriend after his daughters visited the boyfriend's house and lied about it to him and that he determined after checking her that she was not a virgin. I would hold that the value of the proffered evidence to the defense does not outweigh the state's interest in excluding it and, consequently, that the trial court was not constitutionally required to admit it. OEC 412(2)(b)(C).

Finally, the majority holds that, because defendant's proffered evidence should have been admitted, defendant's convictions on several charges with respect to which S's physical condition was not an issue—that is, charges not alleging penetration—must be reversed, in addition to the convictions on those charges with respect to which S's physical condition was an issue.[5] According to the majority, its result is required because the excluded evidence bears directly on S's credibility. Even if evidence of prior sexual behavior could sometimes be relevant to a victim's credibility, however, it could not have been relevant to S's credibility in this case. S was not asked to testify whether the prior sexual conduct occurred. At the hearing on defendant's OEC 412 motion, only defendant

---

[5] Defendant has requested that his conviction as to all "sex-related" counts be reversed. Neither defendant nor the majority explains why the exclusion of defendant's proffered evidence is more relevant to the sex-related charges that did not implicate S's physical condition than it is to the non-sex-related charges that also did not implicate S's physical condition. If S's credibility is the issue, then the dividing line should more properly be those charges about which S testified.

and his sister Samantha testified; S did not testify. At trial, she testified that she had been sexually abused by defendant. The credibility of that testimony would not have been undermined or supported by admitting evidence about an alternative explanation for S's physical condition, because S's testimony that defendant sexually abused her is not inconsistent with S having engaged in prior sexual behavior. Because S never was asked to testify about her prior sexual behavior, the evidence that defendant did offer was not relevant to her credibility. I would not reverse defendant's convictions on the charges in which S's physical condition was not an issue.

For the reasons stated above, I dissent.