Argued and submitted May 14, reversed and remanded for new trial June 26, 2003

## STATE OF OREGON,
*Respondent,*

*v.*

## ANDRE NEIL GERARD,
*Appellant.*

00FE-0271AB; A114761

72 P3d 88

Whitney P. Boise argued the cause for appellant. With him on the opening brief was Hoevet, Snyder & Boise, P.C.

Katherine H. Waldo, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

BREWER, J.

## BREWER, J.

■ Defendant appeals from his convictions for first-degree rape, ORS 163.375, first-degree unlawful sexual penetration, ORS 163.411, and first-degree sexual abuse, ORS 163.427. Defendant argues that the trial court erred in granting the state's motion *in limine* to prohibit him from introducing evidence concerning his relationship with his stepdaughter, the complainant. The court held that expert testimony was necessary to establish the relevance of such evidence to the issue of whether or not abuse had occurred. We review decisions regarding the necessity of expert testimony to establish a foundation for the relevance of evidence for errors of law. *State v. Beden*, 162 Or App 178, 182, 986 P2d 94 (1999). We reverse and remand for a new trial.

Defendant was arrested after his 10-year-old stepdaughter, J, reported to her school counselor, Marcia Houston, that defendant had raped her at least 10 times in the past year. Houston called a representative of the former State Office for Services to Children and Families, who in turn notified the Bend Police Department. Detective Church went to the school and interviewed J, who told Church that defendant would come into her bedroom late at night, tap her leg to see if she was awake, and then "mess with" her body. J stated that, because she was afraid, she always pretended to remain asleep and that defendant "thinks I am asleep when he does it." Church conducted further investigation, which included having J's bed sheets tested for semen, although approximately one month had passed since the last alleged rape, and J's mother told him that the sheets had since been laundered. The test results were negative. J was referred to Dr. Largent, a medical doctor who specializes in evaluating children who are believed to be victims of sexual abuse. Largent's physical examination of J revealed a minor abnormality in J's hymen.

At defendant's jury trial, the state called Houston, Church, and Largent to testify. All three witnesses testified about what J had told them. In addition, Largent testified that the abnormality in J's hymen raised some suspicion, but she stated, "Possibly that's the way she's made, possibly it could be that there was some type of trauma, penetrating

trauma." Largent testified that J's physical condition was not inconsistent with sexual abuse but that it also did not establish that abuse had occurred.

The state then called J to testify. Before putting her on the stand, the prosecutor moved *in limine* to preclude defendant from cross-examining J regarding her relationship with defendant:

> "I anticipate that, during cross examination, defense counsel may inquire about such matters as what conduct [J] engaged in after disclosure that her stepfather raped her, as well as conduct that she engaged in prior to that time.

> "And it would include such things as that [J] went to a square dancing lesson shortly after she disclosed the abuse; that [J] gets good grades in school; that [J] went on a trip with the defendant sometime in November, and so on. And I have a number of concerns with that sort of evidence, Your Honor.

> "My first objection would be under Rule 401, that it's the, that evidence has not even the slightest tendency to make the existence of a fact that is of consequence to the determination of this action more probable or less probable. It's simply not relevant. And the problem with any relevancy argument that the defendant would advance here is defendant's failing to provide the necessary link.

> "In order to make that evidence relevant, defendant needs to have expert testimony much as the State's required to produce expert testimony when, regarding certain behaviors of a child that indicate they have been sexually abused. We need expert testimony to establish the foundation for relevance of that sort of evidence. We don't have that here."

Defendant's counsel responded as follows:

> "Your Honor, I think what [the prosecutor is] trying to do by this peremptory strike is eliminate some evidence which we're perfectly entitled to produce, and that's the relationship between [J] and her stepfather. And we intend to do that. We'll ask about a trip to Washington and Florida that she begged to go with him on, about hunting and fishing trips that they go on together, and the time that they spend together. It doesn't require an expert to conclude

what the nature of the relationship is between stepfather and daughter in those circumstances."

The prosecutor asserted that the evidence that defendant sought to introduce was

"syndrome-type evidence. This is the sort of evidence that shows us this child was not sexually abused. That requires expert testimony, just as the converse requires expert testimony. If we want to say that certain behaviors are indicative that a child has been sexually abused, we, we most certainly are not allowed to simply put on the evidence and then argue."

The court ruled that defendant could not cross-examine J about his relationship with her, concluding that "that would require some sort of expert testimony to connect that sort of conduct to whether or not sexual abuse occurred." After J testified, both the state and defendant rested. The jury convicted defendant.

On appeal, defendant renews his argument that expert testimony was not required to establish the relevance of the testimony that he sought to elicit from J. He argues that he did not intend to offer evidence concerning how child sexual abuse victims typically behave. Rather, he asserts that he intended to show that J continued to seek out his attention following the alleged abuse in order to raise reasonable doubt as to whether the abuse occurred. The state concedes that expert testimony was not a prerequisite to the introduction of evidence about J's seemingly "normal" behavior in defendant's presence. It asserts, however, that defendant failed to preserve the alleged error by making an offer of proof. Alternatively, the state argues that the error was harmless.[1]

■      We first consider the state's contention that defendant failed to make an adequate offer of proof. The state asserts that it is unclear what J's answers would have been to questions about her wanting to go with defendant to Washington and Florida and about hunting and fishing trips

---

[1] The state also argues that the trial court could have excluded the evidence as irrelevant, OEC 401, or under OEC 403. We reject those arguments without discussion.

that she and defendant took. The state postulates that J might have denied wanting to accompany defendant or explained that the circumstances were such that defendant would have been deterred from abusing her. Thus, the state reasons, we lack sufficient information to determine the effect of any error the court committed by granting the state's motion. *See State v. Wonderling*, 104 Or App 204, 207, 799 P2d 1135 (1990) ("An offer of proof is adequate if we are able to determine whether it was reversible error to exclude proffered evidence.").

The Supreme Court has stated, "One method of making an offer of proof is by question and answer. It also is acceptable, however, for a party's counsel to state what the proposed evidence is expected to be." *State v. Phillips*, 314 Or 460, 466, 840 P2d 666 (1992) (citing *State v. Affeld*, 307 Or 125, 128, 764 P2d 220 (1988)). In responding to the state's motion *in limine*, defendant's counsel stated, "We'll ask about a trip to Washington and Florida that she begged to go with him on, about hunting and fishing trips that they go on together, and the time that they spend together." The phrasing of that statement implied that defendant expected J's testimony to support those assertions. Under *Phillips*, that statement was an adequate offer of proof. *See State v. Luke*, 104 Or App 541, 544, 802 P2d 672 (1990) ("Defendant's counsel specifically stated to the judge on the record what the witness would say if she were permitted to testify and what he expected to prove by the testimony. * * * That was done expressly for the purpose of appeal and was a proper offer of proof."); *Wonderling*, 104 Or App at 207 ("Defendant revealed to the trial court the content of his proposed cross-examination of the victim and the other evidence that he would introduce. That information constitutes an adequate offer of proof under *Affeld*.").

Moreover, OEC 103(1)(b) provides that error may be predicated on a ruling excluding evidence if the substance of the evidence "was made known to the court by offer or *was apparent from the context within which questions were asked*." (Emphasis added.) The context here was the state's motion *in limine*. As noted, the prosecutor "anticipate[d]" that defendant would question J about several matters,

including "that [she] went on a trip with the defendant some-time in November[.]" Defendant's counsel elaborated on the subjects that he intended to explore and explained the relevance of that evidence. The state did not argue at trial, as it does now on appeal, that it was uncertain how J would respond to the questioning.[2] Rather, its argument that expert testimony was required to explain why J's behavior was not inconsistent with abuse indicates that the state fully expected J to testify as defendant asserted. In that context, it also was apparent to the trial court how J was expected to testify. In short, the state made its motion *in limine* and the court ruled as it did precisely because they anticipated the content of J's testimony. Because it is evident that all parties shared the same assumption as to what J would say on cross-examination, we reject the state's argument that defendant failed to preserve the error, and we turn to the merits.

■ As a preliminary matter, we accept the state's concession that defendant was not required to provide expert testimony to establish a foundation for the relevance of his relationship with J. The trial court concluded that defendant sought to introduce "syndrome evidence," evidence that J's behavior was not like behavior typically associated with child sexual abuse. Because syndrome evidence is not admissible without a scientific foundation to explain it, *State v. Milbradt*, 305 Or 621, 631, 756 P2d 620 (1988), the court excluded the evidence. In *State v. Brown*, 297 Or 404, 407, 687 P2d 751 (1984), the Supreme Court stated that the term "scientific" refers to "evidence that draws its convincing force from some principle of science, mathematics and the like." That stands in contrast with nonscientific evidence, which draws its convincing force from everyday experience. *See* UCrJI 1006 (instructing that jurors may draw inferences and

---

[2] In this court, defendant asserts that, had J denied his assertions about trips, he was prepared to call J's mother to testify that J had gone on trips with defendant and begged to go on others. Defendant did not make an offer of proof to that effect at trial. However, because there appeared to be no dispute about how J would answer the proposed cross-examination, defendant had no reason to believe that such an offer was necessary. Moreover, because the trial court ruled that evidence pertaining to J's relationship with defendant was inadmissible without a scientific foundation, defendant did not need to make a further offer of proof. *See State v. Olmstead*, 310 Or 455, 461, 800 P2d 277 (1990) ("When the trial court excludes an entire class of evidence by declaring, in advance, that it is inadmissible as a matter of law, the ruling renders a further offer futile.").

reach conclusions that are reasonable and based on common sense and experience).

The state often introduces scientific evidence in child sexual abuse cases when it seeks to show that behavior that seems, in common experience, to be inconsistent with sexual abuse is, in fact, indicative of abuse—in other words, that seemingly incongruous behavior is part of the "syndrome" of child sexual abuse. *See, e.g., State v. Sanchez-Cruz*, 177 Or App 332, 341, 33 P3d 1037 (2001), *rev den*, 330 Or 463 (2002) (reasoning that "a medical diagnosis is scientific evidence"; thus, "a diagnosis of child sexual abuse is 'scientific' evidence"). However, the converse is not true. In this case, the inference that defendant wanted the jury to draw from the evidence of his relationship with J did not involve scientific principles. Instead, defendant sought to have the jury apply its ordinary understanding to infer from that evidence that defendant and J had a "normal," nonabusive relationship. Expert testimony was not required to establish a foundation for the relevance of that evidence, because it is not beyond an average juror's understanding that J's purported pleas to go on trips with defendant *could* be indicative of a normal relationship and thus be inconsistent with her claim of sexual abuse. *See Beden*, 162 Or App at 183 ("Expert testimony is needed *only* when an average juror would be unable to *understand* the issues without expert assistance, not simply because a juror has not experienced the circumstances." (Emphasis in original.)). The trial court therefore erred in excluding testimony concerning the nature of J's relationship with defendant. It follows that we may affirm the trial court only if we conclude that the error in excluding that evidence was harmless.

Evidentiary error is harmless if there is little likelihood that the error affected the verdict. *State v. Irons*, 162 Or App 512, 523, 987 P2d 547 (1999), *rev den*, 330 Or 120 (2000). In reviewing for harmless error, we first determine the relative strength of the parties' evidence and then consider, in the totality of the evidence, how significant the erroneously excluded evidence was. *State v. Cunningham*, 179 Or App 359, 382, 40 P3d 1065, *adh'd to on recons*, 184 Or App 292, 57 P3d 149 (2002). The state argues that the error was harmless because, even if J had admitted on cross-examination that

she carried on a normal father-daughter relationship with defendant, that admission would not likely have affected the jury's assessment of her credibility regarding her allegations of sexual abuse. The state reasons that the jury could have concluded that, because J found safety in pretending not to be aware that defendant was abusing her, refusing to carry on a normal relationship would have betrayed her awareness. The state also argues that evidence of the relationship would not have detracted from J's testimony that she was afraid of defendant, because, it asserts, J testified that she was afraid of defendant only during actual sexual contact and that she feared that defendant would hurt her if she told anyone about the abuse. In other words, in the state's view, J was not afraid of defendant during their "ordinary" time together. Finally, the state urges that the evidence of guilt was strong.

Defendant responds that he was entitled to argue to the jury that, if he had in fact abused J, it might have been reasonable for her to carry on as though nothing had happened but it would not have been reasonable for her to actively seek out opportunities to be with him, to the point of "begging" to go on out-of-state trips with him. He also disputes that J's testimony left the jury with the limited view of her fear that the state proposes. Finally, defendant argues that the evidence of guilt was based entirely on J's credibility and, thus, evidence that might have cast doubt on her allegations was too significant to deem its exclusion harmless.

We agree with defendant. No physical evidence was introduced at trial. Moreover, Largent's testimony about J's physical condition was inconclusive. The other witnesses related only what J had told them. Thus, the state's case was strong only if the jury believed that J was truthful about the alleged abuse. Defendant's proposed cross-examination was specifically intended to raise doubts about J's testimony. If the jury had heard testimony that J had actively sought defendant's company, it might have questioned whether that behavior was consistent with J's allegations of abuse. Because the strength of the state's case depended on J's credibility, casting even some doubt on her credibility might have sufficed to tip the evidentiary scales in defendant's favor. We

therefore cannot say that there is little likelihood that defendant's proposed cross-examination would have changed the outcome of the case. The error was not harmless.

Reversed and remanded for new trial.