Argued November 4, reversed and remanded December 14, 1966,
  petition for rehearing denied January 17, 1967

## STATE OF OREGON *v.* WALTER C. NAB
### 421 P. 2d 388

*Francis F. Yunker,* Portland, argued the cause and filed a brief for appellant.

*Jacob B. Tanzer,* Deputy District Attorney, Portland, argued the cause for respondent. With him on the brief was George Van Hoomissen, District Attorney, Portland.

Before MCALLISTER, Chief Justice, and SLOAN, GOODWIN, HOLMAN and LUSK, Justices.

LUSK, J.

Defendant was convicted of statutory rape, ORS 163.210, upon a girl 13 years of age, and has appealed.

There are a number of assignments of error, but only one that requires discussion. We have concluded that reversible error was committed by the trial court in cutting off the defendant's right of cross-examination of the prosecutrix.

The prosecutrix lived in the home of her maternal grandparents, who were friends of the defendant. Her father has been several times divorced and she was not on good terms with him. The defendant, a man 50 years of age, whom the prosecutrix called "Uncle Walt" (although they are not related) was in the habit of occasionally calling for her in the morning and driving her to school. He was in the electrical contracting business and he gave her a part-time job in the office on Saturdays and during the vacation period.

The prosecutrix testified that she first had sexual relations with the defendant shortly after Christmas, 1964, and thereafter from time to time until July, 1965. These acts occurred, according to her testimony, in the defendant's office. The defendant took the stand and denied the charges.

Through a medical witness, who examined the prosecutrix, the state proved that there had been penetration into the vagina, most likely due to intercourse.

Under questioning by counsel for defendant the prosecutrix testified that during the period above referred to she also had sexual relations with her father, her paternal grandfather, and the defendant's son. The record shows that indictments had been returned against her father and grandfather. The prosecutrix testified that she had never told anyone about her conduct with the others until after she disclosed to her Aunt Laurel, with whom she had been staying, her relations with the defendant. Her aunt, having become suspicious of the defendant, questioned her upon the subject and she "finally told her about it." Her aunt took her to see a detective on the Portland Police Force and under questioning by him she at first denied relations with others than the defendant, but finally admitted her relations with the father, the grandfather, and the defendant's son. She testified on cross-examination:

"Q Now, why was it that you told him, the detective, 'no' first about your father? Didn't that—

"A Because I didn't think it would come up.

"Q You thought you could hide it, is that what you mean?

"A Yes, I thought I could, but I couldn't.

"Q Why did you want to hide your father and grandfather and not your Uncle Walt?

"A I didn't want to—I wanted to hide all of them, but I couldn't.

"Q Why?

"A Because the—my aunt brought it to my attention.

"Q If she had brought it to your attention

about somebody else, would you have said yes, no matter who she brought attention to?

"A If it would have been so."

The court later sustained objections to questions put to the prosecutrix by counsel for defendant concerning the truth of these other charges. We quote from the record:

"Q Now, did you have occasion, now, to think over about these complaints about your father and grandfather and discuss this with anybody about whether those accusations are really true or not?

"A No.

"MR. TANZER [Prosecutor]: Objection.

"Q (By Mr. Yunker) [Defendant's counsel] You haven't discussed—

"THE COURT: Sustained.

"Q (By Mr. Yunker) Are those accusations true?

"MR. TANZER: Objection.

"THE COURT: Sustained.

"Q (By Mr. Yunker) Have you talked to Mrs. Crawford [the prosecutrix' aunt] about this matter?

"A Which?

"Q What?

"A Which?

"Q Any of the—your father and grandfather, Mr. Nab, his son, anyone else?

"MR. TANZER: Excuse me. I'll object unless it's restricted to this defendant. I'm not going to try the two other cases during this case. Those will come in due time.

\* \* \* \* \*

"THE WITNESS: No.

"THE COURT: Sustained."

The rulings are assigned as error.

■■ The general rule is that in prosecutions for statutory rape, consent not being an issue, evidence of prior intercourse with others than the defendant is inadmissible: *State v. Morrow,* 158 Or 412, 434, 75 P2d 737, 76 P2d 971; *State v. McKiel,* 122 Or 504, 510, 259 P 917; *State v. Haynes,* 116 Or 635, 639, 242 P 603; Annotation, 140 ALR 364, 365. As an exception to this rule, however, it is held that where, as here, medical testimony shows that the prosecutrix had a ruptured hymen, probably due to sexual intercourse, it is competent for the defendant to show that she had had sexual relations with others, since the jury might find from such proof that her physical condition had been caused by some other person: *State v. Newburn,* 178 Or 238, 240, 166 P2d 470; *State v. Haynes,* supra, 116 Or at 640. See, also, *State v. Goguen,* 196 Or 586, 589-590, 250 P2d 924. Under this exception the evidence as to the prosecutrix' prior relations with her father, grandfather, and the defendant's son was properly admitted. The question here is whether it was competent for the defendant to endeavor by cross-examination of the prosecutrix to show that her testimony in this regard was false.

There is a line of cases which hold that the defendant may show, either by cross-examination, independent evidence, or both, that the prosecuting witness has made similar accusations against other persons which were later admitted to be false or were disproved: *People v. Hurlburt,* 166 CA2d 334, 333 P2d 82, 75 ALR2d 500; *People v. Wilson,* 170 Mich 669, 137 NW 92, 41 LRA NS 216; *People v. Evans,* 72 Mich 367, 40 NW 473; *State v. Warner,* 79 Utah 510, 13 P2d 317 (overruling opinion in 79 Utah 500, 291 P 307); Annotation, 75 ALR2d 508. The theory of these decisions is that, since it is axiomatic that no charge is more

easily made or more difficult to disprove than a sex charge, particularly if made by a young child, such evidence is relevant as to the state of mind of the prosecutrix and is offered "not simply to impeach the prosecutrix, but as independent evidence that the charged crime was not in fact committed": *People v. Hurlburt,* supra, 166 CA2d at 339. As the court said in *People v. Evans,* supra, 72 Mich at 380:

> "If she was accustomed, and had on numerous occasions, as claimed by counsel for respondent, made statements charging, not only her brothers, but numerous other men of that community, with other similar offenses, and then admitted the falsity of such charges, it would have a tendency to show a morbid condition of mind or body, and go a long way in explaining this charge, which, under the circumstances, and the surroundings shown to exist, seems almost unaccountable."

See, also, III Wigmore on Evidence (3d ed) 459, § 924a, 523, § 963.

It should be observed that the rule of these cases does not permit the trial to stray from the central issue of the guilt or innocence of the defendant into a full-scale investigation of charges made by the prosecutrix against other persons. That would be intolerable. The rule is limited to the reception of evidence that the prosecutrix had admitted the falsity of the charges or they had been disproved. If, of course, she admits their falsity on the stand the evidence would be competent.

Moreover, it is to be borne in mind that a wide latitude of cross-examination is allowed in this class of cases. As Mr. Justice BELT said in *State v. McKiel,* supra, 122 Or at 507-508:

> "The very nature of the charge is apt to arouse sympathy and create bias. The testimony of the

prosecutrix should, therefore, be subjected to the closest scrutiny as in most instances the conviction of the defendant hinges upon whether the jury believes the woman or the man. Ordinarily, third persons are not present at the time of the commission of the alleged crime. Defendant was entitled to test the accuracy and probability of the girl's story from every angle. It is true that the examination cannot extend indefinitely into the field of incompetent, immaterial or collateral matters, but it is better to err on the side of liberality than to deny defendant the right to make a searching inquiry."

The record in the case at bar is typical. Apart from the testimony of a neighbor of the grandparents that she had observed the defendant and the prosecutrix kissing in his automobile, and evidence as to money given to the prosecutrix by the defendant (which he testified was payment for her services as an employee) there was no corroboration of the prosecutrix' testimony, and the problem for the jury essentially was to determine whether she or the man was lying. In these circumstances, we are constrained to hold that the defendant had "the right to make a searching inquiry" (*State v. McKiel,* supra) into the truth, not only of the charge against the defendant, but the other charges as well. Denial of that right was prejudicial error.

The judgment is reversed and the cause remanded for a new trial.