Argued and submitted March 25, 2003, affirmed March 3, 2004

# STATE OF OREGON,
*Respondent,*

*v.*

# PAUL LEE DRIVER,
*Appellant.*

## 002721; A114234

86 P3d 53

Lawrence Matasar argued the cause and filed the brief for appellant.

Joanna Jenkins, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Edmonds, Presiding Judge, and Schuman and Ortega,* Judges.

ORTEGA, J.

---

* Ortega, J., *vice* Kistler, J., resigned.

## ORTEGA, J.

Defendant appeals his three convictions for first-degree sexual abuse. He argues that the trial court erred in excluding evidence that the victim, a nine-year-old girl, recanted a previous allegation of sexual abuse against another man. After the victim denied on cross-examination that she had made or recanted the previous allegation, defendant attempted to introduce extrinsic evidence to rebut the denial. The trial court excluded that evidence on the ground that extrinsic evidence of prior false allegations of sexual abuse is inadmissible under both the Oregon Evidence Code (OEC) 608(2), and the Confrontation Clause of the Oregon Constitution, as interpreted in *State v. LeClair*, 83 Or App 121, 730 P2d 609 (1986), *rev den*, 303 Or 74 (1987). We affirm that result but apply a different analysis.

At trial, defendant denied any sexual contact with the victim (M) and sought to impeach her testimony with evidence concerning a prior false allegation of abuse that she had allegedly made to her six-year-old friend R when she was herself six years old. (M was nine years old at the time of trial; defendant's abuse began sometime during the two years before trial.) Defendant's counsel asked M, in front of the jury, if she had accused R's uncle, Osborn, of touching her sexually, and if she had later recanted the allegation. M denied making (or recanting) the allegation.[1] The state did not object to that line of questioning.

---

[1] The exchange follows:

"Q. Okay. [M], was there a time when you made up a story about [Osborn] touching your private parts that wasn't true?

"A. No. Who told you that?

"Q. Did you tell [R, M's six-year-old friend] that [Osborn] had touched your privates?

"A. No.

"Q. Do you remember talking with [Osborn's sister]?

"A. Well, not about that, but I—

"Q. Not about that?

"A. Yeah, because that never happened.

"Q. Did you tell [Osborn's sister] that you made up this story because you were mad at [Osborn]?

"A. No."

Defendant then sought to offer evidence from Osborn and Osborn's sister to rebut M's denial.[2] Although it had failed to object to the original cross-examination of M on that issue, the state objected to the introduction of the proffered extrinsic evidence, arguing that it was barred by OEC 608(2). The state further argued that a constitutionally based exception to OEC 608(2) announced in *LeClair* did not render the evidence admissible because the evidence did not satisfy *LeClair*'s three-part test. *See* 83 Or App at 130. Defendant responded that the *LeClair* test was satisfied and that the evidence therefore was admissible under the Confrontation Clause of Article I, section 11, of the Oregon Constitution. The trial court excluded the proffered testimony of Osborn and his sister after determining that it failed the *LeClair* test. Defendant was convicted of three counts of first-degree sexual abuse and was sentenced to three concurrent 75-month sentences.

■      Defendant now appeals his convictions. He argues that the trial court erred in excluding extrinsic evidence to rebut M's denial of the prior false allegation of sexual abuse. Defendant contends that such evidence is admissible under the Confrontation Clause of the Oregon Constitution, as interpreted in *LeClair*. The state responds that extrinsic evidence of prior bad acts is prohibited under OEC 608(2) and, to the extent such evidence is allowed under the Confrontation Clause, it was properly excluded here under the *LeClair* test. We agree with the state's conclusion, although not with its analysis. Whether the evidence failed the *LeClair* test is irrelevant; the constitutional exception announced in *LeClair* simply does not encompass extrinsic evidence, and the

---

[2] Osborn's sister was prepared to testify regarding a report from R that M had told her that Osborn had "pulled [M's] pants down, and touched her butt." Osborn's sister also would have testified that, when she confronted M about the allegation, "[M] told me, 'No, that it didn't happen.' That she was mad because he wouldn't let her in. Because she was going over there all the time asking for food and stuff."

Osborn was prepared to deny that he had ever "pull[ed] [M]'s pants down and touch[ed] her butt." He also stated that M had made the accusation because M was angry with R: "It wasn't really me she was mad at. It was [R] she was mad at, my niece." On cross-examination, he stated the only reason M could have had to be angry with him was "the fact they couldn't have any ice cream. I mean, I said, 'No.'"

Confrontation Clause does not otherwise require admission of such evidence.

OEC 608(2)[3] provides:

"Specific instances of the conduct of a witness, for the purpose of attacking or supporting the credibility of the witness, other than conviction of crime as provided in ORS 40.355 [OEC 609], may not be proved by extrinsic evidence. Further, such specific instances of conduct may not, even if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness."

In *LeClair*, we created an exception to OEC 608(2) based on the Confrontation Clause of Article I, section 11, of the Oregon Constitution:[4]

"[R]egardless of the prohibitions of OEC 608, the Confrontation Clause of Article I, section 11, requires that the court permit a defendant to *cross-examine* the complaining witness in front of the jury concerning other accusations she has made if 1) she has recanted them; 2) the defendant

---

[3] Oregon's rule differs from Federal Rule of Evidence (FRE) 608(b) in that OEC 608(2) prohibits both cross-examination *and* extrinsic evidence of prior bad acts. FRE 608(b) allows cross-examination into prior bad acts in order to impeach but prohibits the use of extrinsic evidence to prove that the acts occurred. Thus, if a witness denies an act on cross-examination, the examiner must "take the answer of the witness." Laird Kirkpatrick, *Federal Evidence*, § 267, 179-80 (2d ed 1994). The policy reasons for the federal rule's application of a more stringent standard to extrinsic evidence than to cross-examination provide a useful backdrop for our discussion:

"This principle serves several useful purposes. It helps keep the focus on substance and matters bearing immediately on credibility by keeping trials from being sidetracked on peripheral issues. It reduces surprise that might unfairly confront the calling party if he were faced with unexpected proof requiring rebuttal witnesses, as would likely happen if evidence beyond the answer of the witness were allowed. And it reduces the risk of prejudice that comes with opening the subject of behavior bearing on truthfulness, since such behavior is likely to be comprised of acts that are in some sense bad or unattractive, and juries are likely to misuse the evidence * * *. In addition to these virtues, the limit finds practical justification in the fact that merely asking questions about misconduct may effectively warn the jury (rightly or wrongly) to entertain doubt on veracity, and the rhetorical impact of such questions can be countered or dealt with by lawyerly argumentation at the close of trial."

*Id.*

[4] That section provides, in pertinent part:

"In all criminal prosecutions, the accused shall have the right * * * to meet the witnesses face to face, and to have compulsory process for obtaining witnesses in his favor * * *."

demonstrates to the court that those accusations were false; or 3) there is some evidence that the victim has made prior accusations that were false, unless the probative value of the evidence which the defendant seeks to elicit on the cross-examination (including the probability that false accusations were in fact made) is substantially outweighed by the risk of prejudice, confusion, embarrassment or delay."

*LeClair,* 83 Or App at 130 (emphasis added). Thus, in a sex abuse case, if *LeClair*'s three-part test is met, the defendant may cross-examine the alleged victim regarding prior false allegations of abuse. However, contrary to the assumptions of both parties and the trial judge here, neither *LeClair* nor the Confrontation Clause extends that exception to extrinsic evidence.

In *LeClair*, we considered the admissibility of evidence of a rape victim's alleged prior false allegations of sexual abuse. The proffered evidence included both cross-examination of the victim and extrinsic evidence of the prior allegations. 83 Or App at 123-26. However, as the above quotation from *LeClair* suggests, the constitutional exception announced in *LeClair* referred only to cross-examination evidence.

Our cases following *LeClair* offer somewhat conflicting views on whether that decision might also provide for admission of extrinsic evidence. In *State v. Gilliland,* 136 Or App 580, 902 P2d 616 (1995), we held that the trial court erred when it entered a pretrial order to admit cross-examination and extrinsic evidence of an alleged prior false allegation of rape without first determining whether the evidence met one of the *LeClair* categories:

"If the trial court intended to admit the evidence to impeach the complaining witness' credibility, the trial court was required to make the findings set out in our holding in *LeClair* and *should have limited defendant's evidence to an inquiry addressed to the complaining witness on cross-examination.*"

*Gilliland,* 136 Or App at 586 (emphasis added).[5]

---

[5] In *Gilliland*, we presented alternative holdings because we were unsure whether the trial court had intended to admit the evidence as impeachment evidence under OEC 608 or as evidence of motive or bias under an exception to the

However, in *State v. Hendricks*, 101 Or App 469, 791 P2d 139, *rev den*, 310 Or 133 (1990), we suggested that *LeClair* might also allow admission of extrinsic evidence in some circumstances. We held that the trial court properly excluded evidence of a prior false allegation because the defendant had failed to make the proper offer of proof under *LeClair*. *Hendricks*, 101 Or App at 472. The defendant's offer of proof had been based on extrinsic evidence, not cross-examination. *Id.* at 471. We said:

> "Defendant's offer of proof did *not* include cross-examination of the victim. Even if his confrontation argument relates to the denial of an opportunity to cross-examine the victim, we are unable to review a contention that the court should have allowed defendant to cross-examine her. Moreover, there is no basis under the Confrontation Clause or *State v. LeClair* for admission of the [extrinsic evidence], *independent of an effort by defendant to cross-examine the victim.*"

*Id.* at 472 (citation omitted; first emphasis in original; second emphasis added).

■ To the extent that *Hendricks* can be read to suggest that extrinsic evidence might be allowed under *LeClair* if the proper offer of proof is made, we disavow it. *LeClair* does not address extrinsic evidence; the exception to OEC 608(2) delineated in *LeClair* was limited to cross-examination of the victim-witness.[6] That is because the Confrontation Clause,

---

rape shield statute, OEC 412. The quotation addresses our holding in the event that the trial court intended to admit the evidence for impeachment purposes. *See Gilliland*, 136 Or App at 586.

[6] References to cross-examination, and only to cross-examination, are abundant in *LeClair*. For example, our discussion of Confrontation Clause cases was limited to cross-examination rights:

> "Although the Confrontation Clause 'tips the scales' in favor of permitting cross-examination if it could reasonably be expected to have an effect on the jury, a court may prohibit cross-examination for impeachment purposes when the probative value of the evidence that the defendant seeks to elicit is substantially outweighed by the risk of prejudice, confusion, embarrassment or delay."

*LeClair*, 83 Or App at 129 (citations omitted). Our discussion of case law from other states likewise was limited to cross-examination:

> "Courts have uniformly stated that, when a complainant has recanted prior accusations or they are otherwise demonstrably false, the trial court must allow the defendant to cross-examine the complaining witness regarding them."

the source of our *LeClair* holding, does not provide a right to present extrinsic evidence of a prior false allegation of abuse.

That limitation is evident both in Oregon case law addressing Article I, section 11, of the Oregon Constitution and in corresponding federal case law analyzing the reach of a defendant's confrontation rights under the Sixth Amendment. In *State v. Herrera*, 268 Or 349, 594 P2d 823 (1979), the Oregon Supreme Court discussed defendants' confrontation rights solely in terms of cross-examination:

> "The right of confrontation protects two vital interests of the defendant. First, it guarantees that the defendant has an opportunity to cross-examine the witness against him in order to test his sincerity, memory, ability to perceive and relate, and the factual basis of his statements. This purpose of confrontation helps to assure the accuracy of the result of the truth-determining process by giving the accused an opportunity to test the recollection and sift the conscience of a witness. * * *

> "The second interest of the defendant which the right to confrontation protects is enabling the defendant to demonstrate to the jury the witness' demeanor when confronted by the defendant so that the credibility of the witness is displayed in the courtroom. This second purpose is no less important than the first."

286 Or at 353-54 (citation omitted).

■■ Interpretation of the Sixth Amendment Confrontation Clause by the United States Supreme Court is similarly limited to cross-examination rights.[7] For example, in *Davis v. Alaska*, the Court held:

---

*Id.* (citation omitted). Our conclusion was framed in terms of cross-examination as well:

> "We conclude that, under the circumstances, the court's decision to prohibit defendant from cross-examining the victim regarding the 1981 and 1984 incidents did not violate defendant's right to confrontation under Article I, section 11."

*Id.* at 131-32.

[7] Because neither party argues that we should interpret Oregon's Confrontation Clause differently from the Confrontation Clause of the Sixth Amendment, Sixth Amendment cases inform our interpretation of Article I, section 11. *See LeClair*, 83 Or App at 128.

" 'The main and essential purpose of confrontation is *to secure for the opponent the opportunity of cross-examination*. The opponent demands confrontation, not for the idle purpose of gazing upon the witness, or of being gazed upon by him, but for the purpose of cross-examination, which cannot be had except by the direct and personal putting of questions and obtaining immediate answers.' "

415 US 308, 315-16, 94 S Ct 1105, 39 L Ed 2d 347 (1974) (quoting J. Wigmore, 5 *Evidence* § 1395, 123 (3d ed 1940)) (emphasis in *Davis*). Not only are confrontation rights limited to cross-examination, but those cross-examination rights are subject to further paring if the trial judge has "concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 US 673, 679, 106 S Ct 1431, 89 L Ed 2d 674 (1986). Trial judges have less discretion to limit cross-examination where the evidence suggests that the victim has a bias against the defendant or a motive to accuse falsely. *See Boggs v. Collins*, 226 F3d 728, 737-40 (6th Cir 2000), *cert den*, 532 US 913 (2001); *U.S. v. Bartlett*, 856 F2d 1071 (8th Cir 1988); *Hughes v. Raines*, 641 F2d 790 (9th Cir 1981). But even when bias or motive is at issue, the most the Confrontation Clause grants a defendant is a right to cross-examine the allegedly biased witness.

The question before us concerns only extrinsic evidence; defendant has already availed himself of cross-examination (although the state did not require defendant to make an offer of proof under *LeClair*). Defendant's confrontation right encompassed only that cross-examination, subject to the limitations of *LeClair*; it did not extend to presentation of extrinsic evidence of the accusations that M denied making during cross-examination. Accordingly, the trial court's application of the *LeClair* analysis (concluding that the evidence was inadmissible because its probative value was substantially outweighed by the risk of prejudice, confusion, embarrassment, and delay) was unnecessary; *LeClair* was itself limited to cross-examination, and the Confrontation Clause does not otherwise require admission of extrinsic evidence of prior false allegations of sexual abuse.[8]

---

[8] Our disposition renders immaterial the parties' dispute over which prong of *LeClair* to apply.

Defendant additionally argues that the evidence is admissible under a pre-Oregon Evidence Code case, *State v. Nab*, 245 Or 454, 421 P2d 388 (1966). *Nab* does not address extrinsic evidence and otherwise is inapplicable.

In *Nab*, the defendant was prevented from cross-examining the victim concerning the victim's alleged prior false allegations of sex abuse. 245 Or at 457. The Oregon Supreme Court reversed, holding generally (not based on the Confrontation Clause[9]) that "a wide latitude of cross-examination is allowed in this class of cases [*i.e.*, those involving sex crimes]," *id.* at 459, because the charge is "easily made [and] difficult to disprove," *id.*, and "hinges upon whether the jury believes the woman or the man," *id.* at 460 (quoting *State v. McKiel*, 122 Or 504, 507-08, 259 P 917 (1927)). However, *Nab*'s holding allowing admission of cross-examination evidence does not extend to extrinsic evidence. Although the *Nab* court cited cases from other jurisdictions that allowed admission of "cross-examination, independent evidence, or both" relating to prior false allegations in sex abuse cases, *id.* at 458, the admissibility of cross-examination evidence was the only issue before the court in *Nab*. The court's pronouncements on the admissibility of extrinsic evidence are *dicta*.

Moreover, *Nab* has been implicitly overruled by later Supreme Court cases that refused to apply evidentiary rules differently to cases involving sex crimes than to cases involving other crimes. In *State v. Zybach*, 308 Or 96, 99, 775 P2d 318 (1989), the Supreme Court rejected the notion that OEC 404(2), prohibiting propensity evidence of character, should be applied differently in "cases involving sex crimes." In addressing evidence of the *defendant's* post-crime sexual behavior toward the victim, this court had stated that "[w]e apply a rule of inclusion narrowly in cases involving sex crimes," *State v. Zybach*, 93 Or App 218, 221, 761 P2d 1334 (1988); the Supreme Court agreed that the evidence was inadmissible under OEC 404(2), but cautioned that "[t]he rule is not 'wide or narrow' depending on the crime." *Zybach*, 308 Or at 99.[10] Conversely, in *State v. Bashaw*, 296 Or 50, 52,

---

[9] *See LeClair*, 83 Or App at 130 n 8.

[10] The court ultimately held that the evidence at issue, although inadmissible to show the defendant's propensity to have sexual contact with minor girls, was

672 P2d 48 (1983), the Supreme Court rejected a jury instruction asking the jury to view the testimony of an alleged rape victim "with caution" because "[a] charge such as that made against the defendant in this case is one which is easily made and once made difficult to defend against even if the person accused is innocent." The court explained that it found "no reason to continue the institutional assumption that alleged rape victims are less trustworthy witnesses than other victims of crime." *Bashaw*, 296 Or at 54. *Nab* appears to create an exception in sex abuse cases to the pertinent evidentiary rule then in effect[11] based on just that assumption,[12] which is no longer permitted in our jurisprudence.

■■  We briefly address defendant's compulsory process argument. Defendant argues that he was denied his right to present a defense under the Compulsory Process Clause of Article I, section 11, of the Oregon Constitution and the Sixth and Fourteenth Amendments to the United States Constitution. The asserted error was not preserved. To preserve error, "a party must provide the trial court with an explanation of his or her objection that is specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted." *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000). Defendant's counsel made only a passing reference to defendant's "right to present evidence and to defend himself," in the middle of a colloquy spanning over 30 pages of the trial transcript exclusively addressing the admissibility of the evidence under the Confrontation Clause, *LeClair*, and cases following *LeClair*. Defense counsel's passing reference to the compulsory process clause (if that is even what she intended)

---

admissible to show why the child victim had not reported the original sexual assault. *Zybach*, 308 Or at 99-100.

[11] Although not cited by the court in *Nab*, the pertinent evidentiary rule was ORS 45.600 (1965), which provided:

"A witness may be impeached by the party against whom he was called, by contradictory evidence or by evidence that his general reputation for truth is bad or that his moral character is such as to render him unworthy of belief; but he may not be impeached by evidence of particular wrongful acts, except that it may be shown by his examination or by the record of the judgment, that he has been convicted of a crime."

[12] *Nab*, 245 Or at 458-59.

was not sufficiently clear to allow the trial judge to consider the argument.

Even if the argument had been preserved, it would be unavailing. Compulsory process guarantees the right to obtain the testimony of witnesses that is otherwise allowed, but it does not guarantee a defendant the "right to secure the attendance of witnesses whose testimony he ha[s] no right to use." *State v. Mai*, 294 Or 269, 273, 656 P2d 315 (1982) (quoting *Washington v. Texas*, 388 US 14, 23, 87 S Ct 1920, 18 L Ed 2d 1019 (1967)). In *State v. Muyingo*, 171 Or App 218, 226-27, 15 P3d 83 (2000), *rev den*, 332 Or 431 (2001), we held that the Compulsory Process Clause may require admission of exculpatory evidence when admission depends on the balancing of probative value and prejudicial effect. Here, the evidence was simply prohibited; it was not potentially admissible subject to a balancing test.

Affirmed.