Submitted June 21, resubmitted en banc September 8, affirmed December 22, 2010, petition for review denied March 25, 2011 (350 Or 130)

## RANDALL GENE ADAMS,
*Petitioner-Appellant,*

*v.*

## Mark NOOTH,
Superintendent,
Snake River Correctional Institution,
*Defendant-Respondent.*

Malheur County Circuit Court
07126246P; A141620

245 P3d 173

Hari Nam S. Khalsa filed the brief for appellant.

John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Ryan Kahn, Assistant Attorney General, filed the brief for respondent.

Before Brewer, Chief Judge, and Landau, Haselton, Armstrong, Wollheim, Schuman, Ortega, Rosenblum, Sercombe, Judges, and Edmonds, Senior Judge.

ORTEGA, J.

Edmonds, S. J., concurring.

## ORTEGA, J.

Petitioner was convicted of one count of first-degree sexual abuse for molesting his daughter while she slept. He subsequently filed a petition for post-conviction relief, alleging that his trial counsel was constitutionally inadequate in failing to interview, subpoena, and call witnesses who would have bolstered petitioner's theory that the abuse allegation was manufactured by petitioner's ex-wife (the victim's mother). The post-conviction court denied the petition, and petitioner now appeals that judgment. We conclude that the evidence that petitioner claims his trial counsel should have offered (1) would have distracted from petitioner's theory at trial; (2) was not admissible; or (3) was unknown to petitioner and his counsel until after trial. Accordingly, we affirm.

Petitioner's underlying criminal trial was, like many sexual abuse cases, a credibility contest. The victim's sister reported seeing a "ghost" (whom she later identified as petitioner) leaning over the victim during the middle of the night. In a videotaped interview at Liberty House, an abuse assessment center, the victim stated that petitioner had touched her vagina with his finger. That videotaped interview, along with other out-of-court statements, was the key to the state's case; at trial, the victim testified only that she had *dreamed* that petitioner had touched her vagina. Petitioner's theory of the case, meanwhile, was that the victim's mother, his ex-wife, had planted the idea of sexual abuse in retaliation for his years of spousal abuse, both physical and emotional.

The case was tried to the court, and the issue reduced to whether the court would credit the victim's out-of-court statements, which constituted the only evidence of sexual abuse. The court ultimately found petitioner guilty and, at sentencing, explained its reasoning this way:

"[Petitioner], I appreciate your sentiments. Frankly, in order to have found you not guilty, I would have had to find that both of your children were lying to put you in prison, and I declined to do that, and I still decline to do that. If, in fact, they have been put up to this by their mother for some reason, then a horrible miscarriage of justice has occurred, but I do not have evidence of that at all."

In his petition for post-conviction relief, petitioner claimed that his trial counsel had been inadequate in failing to discover and offer precisely the type of evidence that the trial court said was missing: evidence that petitioner's ex-wife had induced a false allegation of abuse. In support of his petition, he offered, among other things, an affidavit from his sister in which she stated that, had she been called as a witness, she would have testified that petitioner's ex-wife had confided in her that, if her marriage to petitioner fell apart, she would tell the police that petitioner had molested their children, so that he would be sent to prison and would never see the children again. Petitioner also offered affidavits from other individuals who would have testified that petitioner's ex-wife had falsely accused a number of people of sexually abusing children, had an obsessive and possessive relationship with her children, and had publicly stated her intention to have petitioner sent to jail to prevent him from gaining custody of the children.

In response to petitioner's allegations, the state[1] argued that the proffered evidence was inadmissible, that neither petitioner nor petitioner's trial counsel had known of some of the evidence, and that, in any event, it would not have made any difference in light of petitioner's other evidence that was admitted at trial on the same theory—*i.e.*, that his ex-wife had planted the idea of petitioner's sexual abuse in order to have petitioner removed from the home. After a hearing on petitioner's claims, the post-conviction court ruled that "[p]etitioner failed to prove each and every allegation of [the] petition" and entered judgment to that effect.

Petitioner appeals that judgment, contending that the post-conviction court should have granted his petition for relief based on his counsel's failure to discover and offer additional evidence about his ex-wife and her influence over the victim. That evidence falls into four categories: (1) evidence about his ex-wife's emotional and psychological instability stemming from past sexual abuse; (2) evidence that she had

---

[1] For clarity, we refer to defendant in this post-conviction proceeding (the superintendent of the correctional institution where petitioner is confined) as "the state."

an unhealthy attachment to her children; (3) evidence that she made numerous allegations of sexual abuse against other individuals; and (4) evidence that she threatened to accuse petitioner of sexual abuse, among other crimes, in order to keep custody of her children. For the reasons that follow, we conclude that petitioner did not demonstrate that counsel fell below constitutional standards in failing to discover or offer evidence in any of the four categories.

■ In order to obtain post-conviction relief for inadequate assistance of counsel under Article I, section 11, of the Oregon Constitution, a petitioner must show, "by a preponderance of the evidence, facts demonstrating that trial counsel failed to exercise reasonable professional skill and judgment and that petitioner suffered prejudice as a result." *Trujillo v. Maass*, 312 Or 431, 435, 822 P2d 703 (1991). Similarly, to establish a violation of the Sixth and Fourteenth Amendments to the United States Constitution, a petitioner must prove that counsel's representation fell below an objective standard of reasonableness in a way that prejudiced the defense. *Strickland v. Washington*, 466 US 668, 687-88, 104 S Ct 2052, 80 L Ed 2d 674 (1984). To the extent that trial counsel has conducted an investigation that is legally and factually appropriate for the case, "[t]he reviewing court will not second-guess a lawyer's tactical decisions unless those decisions reflect an absence or suspension of professional skill and judgment[.]" *Cunningham v. Thompson*, 186 Or App 221, 226, 62 P3d 823, *adh'd to as modified on recons*, 188 Or App 289, 71 P3d 110 (2003), *rev den*, 337 Or 327 (2004).

■ Petitioner's proffered evidence in the first two categories (petitioner's ex-wife's mental and emotional instability stemming from past sexual abuse and her "unhealthy" attachment to her children) suffers the same general defect: the evidence distracted from petitioner's defense theory and, for that reason, trial counsel acted reasonably in not offering it.[2] Petitioner's theory at trial, once again, was that his ex-wife had induced their daughters to accuse him of sexual abuse because of his own physical and emotional abuse of his

_____

[2] In his affidavit and deposition testimony, petitioner contends that he told trial counsel about his ex-wife's previous experiences with sexual abuse and his belief that she suffered from a mental disorder as a result.

ex-wife. In essence, petitioner offered evidence and argument that his ex-wife and daughters conspired to accuse him of sexual abuse because they feared him and wanted him out of the picture; indeed, he was violating a restraining order at the time of the charged sexual abuse. Petitioner now contends that his trial counsel should have offered testimony from various individuals to the effect that his ex-wife took her children everywhere she went; never left them alone with petitioner or petitioner's family members; and had been sexually abused herself, which caused mental and emotional instability. That evidence, petitioner argues, provided further proof of his ex-wife's motives to fabricate allegations of sexual abuse.

Although petitioner's proffered evidence bears on his ex-wife's possible motives to fabricate, it would not have appreciably bolstered the defense theory at trial: that she and the children were frightened of petitioner and wanted him out of the picture for good. In hindsight, petitioner and his trial counsel might not have elected the best defense theory available, but it was not an unreasonable decision. Having chosen that theory, it appears that trial counsel made a tactical decision to simplify the case. To focus the trier of fact instead on petitioner's ex-wife's history of having been sexually and psychologically abused, her mental problems, and her attachment to her children—some of which a factfinder might well attribute to petitioner's own conduct—could have reflected poorly on petitioner while obfuscating his primary defense theory that his ex-wife and her children were motivated by fear and had fabricated the allegations to keep him out of their lives. According to petitioner, trial counsel told him that he did not want to make it appear that the defense was "grasping at straws" by highlighting the ex-wife's sexual abuse, which had occurred 25 years earlier. That was not an unreasonable position, given the defense theory that they had elected to pursue.

Frankly, trial counsel was working with a bad set of facts regarding petitioner's past abuse, walking a tightrope between that behavior and the charged sexual abuse allegations. On this record, we are not prepared to say that reasonable counsel should have walked that line more deftly by

focusing on petitioner's ex-wife's vulnerability or her attachment to her children, thereby running the risks associated with offering that additional evidence. *Cf. Krummacher v. Gierloff*, 290 Or 867, 881, 627 P2d 458 (1981) ("Defense counsel's tactical choice was based upon reason and professional judgment. It may be that another lawyer would have tried the case differently; it may be that a reviewing court would disagree with that counsel's decision. It may even be that, in hindsight, the decision was an error. In the context of this trial, however, we cannot agree that defense counsel's decision not to more fully develop [one theory rather than another] constituted a suspension of professional representation which denied petitioner * * * constitutionally due assistance of counsel.").

■ Evidence in the next category—extrinsic evidence that petitioner's ex-wife had previously accused persons *other than petitioner* of sexual abuse—suffers an even more fundamental defect: Petitioner has not established that the evidence would have been admissible. As a general matter, extrinsic evidence of prior abuse allegations against others is not admissible to impeach a witness's credibility or to prove that the witness acted in conformity with those past acts. OEC 404(3) (evidence of other bad acts is not admissible to "prove the character of a person in order to show that the person acted in conformity therewith"); OEC 608(2) ("Specific instances of the conduct of a witness, for the purpose of attacking or supporting the credibility of a witness * * * may not be proved by extrinsic evidence * * * [or,] even if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness."); *see State v. Driver*, 192 Or App 395, 401-02, 86 P3d 53, *rev den*, 337 Or 248 (2004), *cert den*, 543 US 1126 (2005) (extrinsic evidence of a prior false allegation of sexual abuse was inadmissible). Petitioner has not articulated a persuasive theory as to why a different rule, or some exception, would have applied in his case.[3]

---

[3] That is not to say that abuse allegations are never admissible under OEC 404(3) for some other purpose, such as to prove motive, intent, or plan. Petitioner, however, has not explained how the previous abuse allegations against *persons other than petitioner* would have proved a motive, intent, or plan to falsely accuse *petitioner* of abuse; it is petitioner's burden in a post-conviction relief proceeding to demonstrate how trial counsel was inadequate, and petitioner simply has not developed a persuasive argument as to how his ex-wife's allegations against others

■     Trial counsel's failure to offer evidence of the fourth type—testimony regarding past statements by petitioner's ex-wife to the effect that she would accuse him of crimes, including sexual abuse, to keep custody of her children—is troubling on first blush, but that evidence, too, ultimately fails to support petitioner's claims for post-conviction relief. As part of his post-conviction case, petitioner offered affidavits from persons who would have testified, with varying degrees of specificity, about threats that his ex-wife had made to report him to the police. Most notably, petitioner offered an affidavit from his sister to the effect that his ex-wife had previously threatened to accuse petitioner of sexual abuse in order to maintain custody of their children. The problem with that evidence, as the state points out, is that petitioner has not demonstrated that he or his trial counsel were aware of the threats; in fact, the evidence suggests that petitioner had never himself heard of those threats until *after* he was convicted.[4] Moreover, nothing in the record demonstrates that petitioner's counsel was constitutionally inadequate in failing to uncover that evidence, which was unknown even to petitioner, as part of a reasonable investigation. Without a better showing, the post-conviction court was correct to deny his petition.[5]

In sum, we conclude that petitioner failed to demonstrate that his trial counsel's performance fell below state and federal constitutional thresholds and, for that reason, the post-conviction court did not err in denying his claims for relief. Our conclusion in that regard makes it unnecessary for

---

would be admissible for some purpose other than to show that she had acted in conformity with that past behavior.

[4] In his deposition and affidavit, petitioner explains what he told his trial counsel about his ex-wife. Conspicuously absent from that account is evidence that she had threatened to accuse him of any crimes in order to maintain custody of the children.

[5] It is possible, too, that the evidence would have done more harm than good. Petitioner's ex-wife *might have explained those previous statements in ways that* prejudiced petitioner—for example, by contending that she had some *basis* for thinking that she could prove her earlier allegations of sexual abuse. The post-conviction record reflects that petitioner's ex-wife made a police report in 1996 accusing petitioner of sexually abusing their other daughter. For tactical reasons, reasonable counsel might have steered clear of any evidence that would have required petitioner to defend against other allegations of abuse involving his daughters, whether or not those earlier allegations were substantiated.

us to entertain the state's alternative argument that petitioner failed to establish that he was prejudiced as a result of trial counsel's performance.[6]

Affirmed.

**EDMONDS, S. J.,** concurring.

Petitioner appeals after the post-conviction court ruled that he failed to prove the allegations in his petition that he was prejudiced by his trial counsel's failure to exercise reasonable professional skill and judgment under Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the United States Constitution. On appeal, he argues that the court erred "in finding that petitioner was not denied adequate and effective assistance of trial counsel due to [the] failure to interview, subpoena and call to the [witness] stand [a] number of essential defense witnesses." The majority affirms on the basis that the evidence that petitioner claims his trial counsel should have offered would have distracted from his theory at trial, was not admissible, or was unknown to petitioner and his counsel until after trial. I agree with the majority's result but would affirm on a more fundamental ground that I believe to be essential to the integrity of review of post-conviction relief proceedings.

---

[6] The concurrence agrees with the state's alternative contention that the post-conviction record is fatally deficient because it contains a *transcript* of the victim's interview at Liberty House, whereas a *videotape* of that interview had been introduced at the underlying trial. We do not address that alternative argument, other than to note that no one below—petitioner, the state, or the post-conviction court—ever suggested that the post-conviction court's assessment of prejudice was somehow hampered because the record contained a transcript of the victim's out-of-court statements rather than a videotape showing the victim's demeanor. It is not all that surprising that the issue—whatever its merits—was ignored below, considering that post-conviction records invariably contain cold transcripts of testimony, and we and post-conviction courts routinely review the issue of prejudice in those cases, assessing the "tendency to affect the verdict" without observing the demeanor of witnesses. *See, e.g., Wyatt v. Czerniak*, 223 Or App 307, 195 P3d 912 (2008) (concluding that the petitioner had established prejudice as a result of trial counsel's error in failing to present expert testimony where the case turned on the credibility of the witnesses, including the victim). Here, we know that the trial court found the victim's videotaped testimony to be credible; for that matter, we know that the case turned on her out-of-court statements. Assuming that to be the case—that is, assuming that the victim's testimony was extraordinarily compelling—the question of prejudice would turn on whether evidence that should have been proffered by trial counsel would have had a tendency to affect the trial court's guilty verdict. It is not readily apparent to us why the videotape itself would be necessary to answer that question, were we to reach it.

In the underlying criminal proceeding following a trial to the court, petitioner was convicted of sexual abuse in the first degree involving his eight-year-old daughter. The abuse allegedly occurred at a time when petitioner, the victim, and the victim's sister were present. At trial, the sister testified that she did not observe any abuse. Also, the victim was unable to testify that the abuse occurred. Rather, she testified that she had a dream about petitioner touching her vagina. The state offered, however, out-of-court statements made by the victim, including a videotape of the victim made at a diagnostic facility in which the victim related the circumstances regarding petitioner touching her vagina. The videotaped interview, along with the out-of-court statements of the victim, was the only direct evidence against petitioner and became the critical part of the state's prosecution because of the weakness of the victim's trial testimony.

At the criminal trial, petitioner denied that he had abused the victim or touched her vagina. He also claimed that the victim's statements had been induced by her mother and her sister and were false. The state, on the other hand, contended that the victim's trial testimony was due to her fear of petitioner. Ultimately, after viewing the videotape and the other evidence concerning the credibility of the victim, the court in the criminal proceeding, sitting without a jury, found the victim's claim of abuse to be credible and convicted petitioner of sexual abuse in the first degree.

The gravamen of petitioner's claim in his post-conviction relief petition and on appeal in this proceeding is that, although requested by petitioner, his trial counsel refused to call as witnesses a number of family members. Those witnesses were prepared to testify that the victim's mother had a history of emotional and psychological instability, had an obsessive attachment to her children, and had made numerous false allegations of sexual abuse against others. In petitioner's view, his trial counsel's failure to call the family members as witnesses constituted constitutionally ineffective assistance of counsel and deprived him of a fair trial. Accordingly, he seeks to have his criminal conviction for sexual abuse in the first degree vacated.

In response, defendant argues initially on appeal that the post-conviction court did not have the same evidentiary record regarding the victim's demeanor before it as existed in the criminal trial. Specifically, defendant points to the absence of the videotape of the victim made at the diagnostic facility in the evidentiary record before the post-conviction court. Instead, a transcript of the videotape was admitted as evidence in the post-conviction trial. In his view, that difference in the evidentiary record is fatal to petitioner's appeal in light of the fact that the post-conviction court ruled that petitioner had failed to carry his burden of proving that he was prejudiced by his trial counsel's decision not to call the family members as witnesses. Defendant explains:

> "Because petitioner did not offer the videotape in the post-conviction proceeding, however, the post-conviction court could not evaluate the evidence from petitioner's potential witnesses in light of the strength of key evidence of petitioner's guilt. Necessarily, then, petitioner did not prove to the post-conviction court that his would-be evidence from those potential witnesses had a tendency to affect the ultimate result of the case—petitioner's conviction. On that basis alone, petitioner necessarily failed to carry his burden to prove that his counsel's performance (if defective) prejudiced his case, and thus, this court should affirm the post-conviction court's denial of relief * * *."

Oregon's post-conviction legislation is codified in ORS 138.510 to 138.686. ORS 138.540(1) provides, with certain exceptions not applicable to this case, that "a petition pursuant to ORS 138.510 to 138.680 shall be the exclusive means, after judgment rendered upon a conviction for a crime, for challenging the lawfulness of such judgment or the proceedings upon which it is based." The grounds for post-conviction relief under ORS 138.530(1), in the alternative, are: (1) a substantial denial in the proceedings resulting in the petitioner's conviction or in the appellate review thereof under the United States Constitution or the Oregon Constitution such as to render the conviction void; (2) lack of jurisdiction of the court to impose judgment upon the conviction; (3) a sentence in excess of the sentence authorized by law or the unconstitutionality of such a sentence; and (4) the

unconstitutionality of the statute making criminal the acts for which the petitioner was convicted.

Also, ORS 138.630 governs evidence in the post-conviction relief proceeding of events that occur in the underlying criminal trial of a petitioner for post-conviction relief. It provides:

"In a proceeding pursuant to ORS 138.510 to 138.680, events occurring at the trial of petitioner may be shown by a duly authenticated transcript, record or portion thereof. If such transcript or record cannot be produced, the affidavit of the judge who presided at the trial setting forth the facts occurring at the trial shall be admissible in evidence when relevant. When necessary to establish any ground for relief specified in ORS 138.530, the petitioner may allege and prove matters in contradiction of the record of the trial of the petitioner. When the record is so contradicted, the defendant may introduce in evidence any evidence which was admitted in evidence at the trial to support the contradicted matter and may call witnesses whose testimony at such trial supported the contradicted matter. Whenever such evidence or such witnesses cannot be produced by defendant for any reason which is sufficient in the opinion of the court, such parts of the duly authenticated record of the trial as support the contradicted matter may be introduced in evidence by the defendant. A duly authenticated record of the testimony of any witness at the trial may be introduced in evidence to impeach the credibility of any testimony by the same witness in the hearing upon the petition."[1]

The purpose of those post-conviction statutes, when read together, is obvious: to test the validity of the underlying criminal proceeding with respect to the grounds for relief under ORS 138.530(1) based on the record made in the criminal trial. In *Atkeson v. Cupp*, 68 Or App 196, 199, 680 P2d 722, *rev den*, 297 Or 546 (1984), the court observed that the drafters of the post-conviction relief statutes intended to ensure that post-conviction relief would be as broad as

---

[1] ORS 138.650(1) provides, in part, that either party to a post-conviction relief proceeding may appeal to this court and that the manner of taking the appeal and scope of review shall be the same as that provided by law for appeals in criminal actions except that "[t]he trial court may provide that the transcript contain only such evidence as may be material to the decision of the appeal[.]"

habeas corpus relief in order to avoid constitutional problems that might arise from the decision to make post-conviction relief the exclusive means to challenge the lawfulness of criminal convictions. *See also* Collins and Neil, *The Oregon Postconviction-Hearing Act*, 39 Or L Rev 337, 346, 363-64 (1960). In light of the purpose of the post-conviction relief statutes, it is essential that, for purposes of review, the record before the post-conviction court on a material issue be the same record that existed in the criminal proceeding, except as authorized by ORS 138.630.[2] Otherwise, the validity of the underlying criminal proceeding cannot be properly tested as the Act intends.

Defendant's initial argument regarding petitioner's failure to offer the videotape of the complaining witness frames an issue of preliminary reviewability. Essentially, defendant argues that the post-conviction court and this court are unable to conduct the review required by the post-conviction relief statutes because material evidence from the criminal proceeding on the issue of the demeanor of the complaining witness was not before the post-conviction court or this court regarding the issue of constitutional prejudice. In particular, he points to the trial court's statement at the end of the trial in support of his argument:

"The bottom line—and I have reviewed my notes from the child's testimony and my notes from her statement, the tape at Liberty House—is do I believe this child or do I believe that she has been put up to this by desperate and/or scheming mother and possibly even sister?

"I think those tears were real that I saw from both children, and I think the statements by the child—the fact that she couldn't remember a lot of details, is, in my opinion, almost more credible. * * *

"* * * [B]ased on the evidence that I have heard and the testimony from [the child], I find the evidence has established that * * * you did this crime, you committed this

---

[2] Moreover, ORS 138.650(1) provides, regarding appeals of post-conviction relief judgments, that "[t]he manner of taking the appeal and the scope of review by the Court of Appeals and the Supreme Court shall be the same as that provided by law for appeals in criminal actions," subject to exceptions not applicable here. Under ORS 138.220, a criminal judgment "appealed from can be reviewed only as to questions of law appearing upon the record."

offense, and I find you guilty of the crime of sexual abuse in the first degree."[3]

Defendant concludes that the "constitutional prejudice inquiry" required the post-conviction court to evaluate the evidence that petitioner claims should have been presented in light of the evidence that was actually presented at the criminal trial. Under defendant's reasoning, because the post-conviction court did not have the videotape evidence before it, the post-conviction court's conclusion that petitioner did not carry his burden of proof as to prejudice must be affirmed on appeal.

ORS 138.530(1)(a) places the burden on a petitioner to demonstrate by a preponderance of the evidence that trial counsel failed to exercise reasonable professional skill and judgment resulting in prejudice to petitioner. *Trujillo v. Maass*, 312 Or 431, 435, 822 P2d 703 (1991). By providing in ORS 138.630 that "events occurring at the trial of petitioner may be shown by a duly authenticated transcript, record *or portion thereof*[,]" the legislature obviously contemplated that an entire record of the underlying court proceedings may not always be necessary to the determination of whether post-conviction relief is available. (Emphasis added.) Nonetheless, the assessments required by the statutes of a post-conviction court and a reviewing appellate court must be made in light of the *totality of the circumstances that are material to the issues* raised by a petitioner. *Horn v. Hill*, 180 Or App 139, 148, 41 P3d 1127 (2002) (citing *Carias v. State of Oregon*, 148 Or App 540, 543, 941 P2d 571 (1997)); *see also Cunningham v. Thompson*, 188 Or App 289, 296, 71 P3d 110 (2003), *rev den*, 337 Or 327 (2004) (holding that, where a petitioner's claim of inadequate assistance is based on trial counsel's failure to adduce or controvert evidence pertaining to a particular issue, "an assessment of other evidence pertaining to the issue, as well as any other aspects of the criminal trial that are pertinent to the issue * * *, considered in light of the issues at trial in their entirety, is the proper method for determining whether, *in the totality of the circumstances,*

---

[3] "Liberty House" is the name of the diagnostic facility where the victim was evaluated and the videotape was recorded.

counsel's error had the required 'tendency to affect the jury's verdict' " (citation omitted; emphasis in original)).

In this case, petitioner contends that the proffered testimony, if it had been admitted, would have had a tendency to affect the criminal verdict in light of the totality of the evidence regarding the victim's credibility. Before deciding that issue, the preliminary issue framed by defendant's initial argument is whether this court can conduct the review required by the post-conviction relief statutes in the absence of the videotape in the evidentiary record of the post-conviction proceeding. The answer to that question depends on the materiality of the videotape as evidence of the victim's credibility and whether the post-conviction court otherwise had an adequate record before it in order to determine whether, as a matter of law, constitutional prejudice resulted from trial counsel's failure to call petitioner's witnesses.

In the abstract, a criminal defense attorney's failure to call witnesses or adduce evidence does not always have a tendency to affect the outcome of a prosecution. However, in this case, the outcome of the criminal proceeding depended on whether the criminal court believed petitioner or the victim. The videotape was material evidence of the victim's demeanor at a time when she was first making the claim that she had been abused by petitioner. Although the transcript of the interview at Liberty House is evidence of information she reported during the evaluation, it is not evidence of her demeanor while providing that information. Only the videotape itself constitutes evidence of her demeanor while reporting the abuse at the diagnostic facility. It is also apparent from my inspection of the record that the trial court's finding that the victim was credible was dependent in a material way on its viewing of the videotape. To be sure, it was not the post-conviction court's role to retry the criminal court's credibility determination; instead the post-conviction court had the responsibility, as do we, to assess whether trial counsel's omissions had constitutional implications that tended to affect the prosecution and outcome of the case. In fulfilling that responsibility, the post-conviction court was required to evaluate the evidence of the credibility of the victim's accusations in light of the evidence that petitioner contends his trial counsel should have offered. Without the ability to view

the videotape, the post-conviction court and this court are effectively deprived of the opportunity to make the analysis of prejudice required by the post-conviction relief statutes, because we do not have before us all of the evidence pertaining to the victim's credibility that existed in the criminal proceeding.

The majority's rejoinder that this court typically reviews the issue of prejudice in post-conviction relief cases based on transcripts alone is of little assistance when the verdict in the underlying criminal case depends on evidence that is not in the post-conviction record. The result of the majority's viewpoint is that it ends up reviewing a different case from the case heard by the criminal trial court, contrary to what the post-conviction relief statutes contemplate. In other words, no transcript of the Liberty House interview can adequately substitute for the viewing of the videotape in this case when the verdict was based on the evidence of the demeanor of the complaining witness, evidence that is only available from the videotape. For this reason, I write separately to express my concurrence with the majority's result but not with its analysis.[4]

Brewer, C. J., and Wollheim, J., join in this concurrence.

---

[4] The majority appears to concede that, if petitioner's counsel should have offered the evidence, some of petitioner's proffered evidence may have been relevant to his ex-wife's motives to induce the complaining witness to fabricate her claims but concludes that "it would not have appreciably bolstered the defense theory at trial: that she and the children were frightened of petitioner and wanted him out of the picture for good." 239 Or App at 618. Although I would not reach the merits of petitioner's argument for the reasons stated above, I note that the criminal case was, as the majority also concedes, a credibility contest in which there were no eyewitnesses or physical evidence to corroborate the claim of abuse. Consequently, assuming that it should have been offered by reasonable counsel, any admissible evidence bearing on the complaining witness's lack of credibility would have added to the state's burden of proving petitioner's guilt beyond a reasonable doubt and overcoming the presumption of innocence, resulting in a "close" issue regarding constitutional prejudice for purposes of post-conviction relief.