Argued and submitted September 23, 2008, reversed and remanded
February 25, 2009

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## EMMETT WOODROW MARTIN,
*Defendant-Appellant.*

Washington County Circuit Court
C052083CR; A131522

203 P3d 220

Timothy M. Bowman argued the cause and filed the brief for appellant.

Christina M. Hutchins, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

ORTEGA, J.

**ORTEGA, J.**

Defendant was convicted of two counts of sexual abuse in the first degree. ORS 163.427. His sole assignment of error on appeal is that the trial court erred in denying his motion, made pursuant to OEC 412, to allow evidence of the victim's prior allegations of sexual abuse by others.[1] We reverse and remand.

We take the following facts from the record. Defendant was a friend of the 10-year-old victim's grandfather. Because the grandfather's driving privileges had been suspended, he depended on defendant for transportation. One day in the summer of 2004, the victim rode with defendant and her grandfather to the bank. The victim sat in the middle of the vehicle's front seat, between the two men. The victim alleged that, while her grandfather was in the bank, defendant placed his hand over her clothed vaginal area and rubbed her vagina. She further alleged that defendant placed her hand on his penis and invited her to squeeze it.

In May 2005, after the victim disclosed the incident to her mother, she was evaluated at CARES Northwest in Portland. Reilly, a pediatric nurse practitioner, conducted a physical examination of the victim that, not surprisingly, did not disclose any physical evidence of abuse. Reilly also observed another staff member's interview of the victim from

---

[1] OEC 412 provides, in part:

"(2) Notwithstanding any other provision of law, in a prosecution for a crime described in ORS 163.355 to 163.427, or in a prosecution for an attempt to commit one of these crimes, evidence of a victim's past sexual behavior other than reputation or opinion evidence is * * * not admissible, unless the evidence other than reputation or opinion evidence:

"(a) Is admitted in accordance with subsection (4) of this section [establishing procedural requirements for admission]; and

"(b) Is evidence that:

"(A) Relates to the motive or bias of the alleged victim;

"(B) Is necessary to rebut or explain scientific or medical evidence offered by the state; or

"(C) Is otherwise constitutionally required to be admitted."

For the purposes of OEC 412, "past sexual behavior" means "a volitional or non-volitional physical act that the victim has performed for the purpose of the sexual stimulation or gratification of either the victim or another person," including sexual contact, or an attempt to engage in such contact. *State v. Wright*, 97 Or App 401, 406, 776 P2d 1294, *rev den*, 308 Or 593 (1989).

behind a one-way mirror. Reilly diagnosed the victim as having been sexually abused.

Defendant was charged with two counts of first-degree sexual abuse. Before trial, he moved for the admission of evidence pertaining to three prior allegations of sexual abuse made by the victim: evidence of the then-two-year-old victim's 1997 allegation of inappropriate touching by a man who lived in her household; evidence pertaining to a CARES Northwest evaluation of the victim in 2001, when she was nearly six years old, based on possible sexual abuse by an adult male family friend; and evidence pertaining to a 2003 evaluation of possible sexual abuse by another adult male family friend. As pertinent here, defendant contended that the evidence was admissible under OEC 412(2)(b)(B) to rebut or explain Reilly's diagnosis of sexual abuse by defendant. Specifically, defendant contended that Reilly's diagnosis constituted medical evidence; that, in the absence of any physical evidence of abuse, the diagnosis was based entirely on the victim's history; and that, accordingly, he was entitled to question Reilly regarding the significance of the victim's prior allegations of abuse.

At the hearing on defendant's motion, Reilly testified that the CARES evaluation of the victim consisted of a full physical examination plus the victim's history as provided by the victim's mother and by the victim during her physical examination and the interview. During the evaluation, Reilly learned that there were "other individuals who may or may not have molested" the victim. Reilly testified that her diagnosis that the victim had been sexually abused by defendant did not "depend" on the information about other possible incidents of abuse. She also testified, however, that "you want to rule out all other possible explanations for why the child is saying what she's saying"; that "certainly you always look at past experiences of abuse, and differentiating those from current concerns is taken into the evaluation process"; that anything the victim previously had said and any history that a parent disclosed would be factors in the diagnosis; and that it was "important" to "know what may have occurred to someone in the past" and to "know the details of a previous report."

On cross-examination, Reilly testified that, when CARES evaluates children for sexual abuse, it uses a "classic diagnostic process" that is not different from other types of medical diagnosis. She testified that patient history is "very important" in a medical evaluation "[s]o that you can understand and interpret the signs and symptoms and arrive at a diagnosis and treatment recommendation." Reilly also testified that, although it is "important to know about" prior allegations, it is not the purpose of a CARES evaluation to reinvestigate those events.

Reilly testified that, in this case, she based her diagnosis of sexual abuse on a combination of the victim's history and the absence of physical findings.[2] When counsel asked Reilly whether she had read or relied in part on the three prior evaluations of the victim for sexual abuse, Reilly responded that she had seen only one of the evaluations—the report that had been prepared when the victim alleged abuse by a family friend in 2001.[3] When asked whether the existence of prior allegations of sexual abuse that had not been either proved or disproved was "a concern" in the context of making the current diagnosis, she responded that "those types of considerations are taken into—are put into the diagnostic process." When asked whether, by not having seen two of the prior reports, she was lacking information that might be "significant" to the current diagnosis, Reilly responded, "Mm-hmm."

Later, on cross-examination, Reilly clarified that she had learned of "prior DHS concerns" relating to the victim—that is, the existence of prior allegations of abuse—from the victim, the victim's mother, and the police. Reilly testified that, during the victim's interview at CARES in this case, the victim had stated that "Kyle" had put a blanket over her face and touched her "front and back privates" with his hand, and

---

[2] Reilly testified that she regarded the absence of physical findings in this case as being "consistent with the child's statements" about the type of touching at issue. She conceded, however, that such absence also was consistent with not being touched at all.

[3] Reilly apparently obtained access to the 2001 evaluation through CARES Northwest, which had prepared it. According to Reilly, the report characterized the 2001 incident as "concerning for abuse." The trial court eventually conducted an *in camera* inspection of the report.

that "Rob" had "touch[ed] her in wrong places." Reilly testified that she was able to distinguish those events from the victim's current allegations against defendant because, although they were similar in regard to the nature of the touching, they were "different in the individuals who were involved."

On redirect, Reilly agreed that she was "not here to speculate" whether the victim's previous reports were false. She reiterated that she had read the 2001 evaluation of alleged abuse and that she had "confidence" that the report "alert[ed]" her to make sure that the victim was not "blurring or blending" that incident and the current incident in her mind.

At the conclusion of Reilly's hearing testimony, the state argued that, even if the evidence sought by defendant was relevant to rebut medical evidence, the court should exclude it as unduly prejudicial. Defendant reiterated that, because Reilly had clearly testified that she had based her diagnosis on the victim's history, he was entitled to cross-examine Reilly about her awareness and consideration of the victim's previous allegations as part of that history. Without stating the basis for its ruling, the trial court denied defendant's motion.[4]

At trial, Reilly testified that she specialized in child abuse assessment and that sexual abuse has been a recognized medical diagnosis since at least the early 1980s. Reilly testified that the protocol for making such a diagnosis includes a medical examination and an interview. She testified that the victim in this case was brought to CARES Northwest by her mother, who gave Reilly information about the victim; in addition, Reilly reviewed police reports in the case. Reilly testified that she then conducted a physical examination of the victim, which included talking to the victim about why she was at CARES; according to Reilly's testimony, the victim told her that defendant had "showed me what his private looked like and he touched my private. He made me touch his private." After concluding her physical

---

[4] Before the hearing on defendant's motion, the trial court had opined that the evidence was not relevant.

examination of the victim—which, as previously noted, disclosed no abnormalities—Reilly watched another staff member's interview of the victim through a one-way mirror. Reilly testified that she based her diagnosis that the victim had been sexually abused on the victim's history, on her physical examination of the victim, and on laboratory testing—here, a negative test for sexually transmitted diseases. Reilly was not questioned about, and provided no testimony regarding, either the existence or the significance of the victim's previous allegations of sexual touching by other persons.

■ As noted, defendant was convicted of two counts of first-degree sexual abuse. On appeal, as he did below, he argues that the requested evidence was admissible to rebut or explain medical evidence—Reilly's diagnosis of sexual abuse—by casting doubt on Reilly's methodology, thoroughness, and competence. Defendant contends that Reilly's diagnosis of sexual abuse was based primarily, if not entirely, on what the victim and others told Reilly of the victim's history and that, because Reilly was either unfamiliar with or discounted certain aspects of that history, he was entitled to present evidence of that circumstance to the jury.

■ In determining the admissibility of evidence under OEC 412, the trial court conducts a three-step inquiry. *State v. Muyingo*, 171 Or App 218, 224, 15 P3d 83 (2000), *rev den*, 332 Or 431 (2001). If the evidence concerns the victim's past sexual behavior, but is offered in the form of opinion or reputation evidence, the court must deny admission. *Id.* If it is offered in some other form, the trial court then determines whether the evidence qualifies for admission under one of the exceptions in OEC 412(2)(b); if it does not, again, the trial court must deny admission. *Id.* Finally, if the evidence fits within an exception, the court must balance the probative value of the evidence against its prejudicial effect. *Id.*; *see also State v. Lajoie*, 316 Or 63, 69, 849 P2d 479 (1993) (the purpose of the rule is to encourage victims to report sexual crimes and to assist in the prosecution of their attackers); *State v. Beden*, 162 Or App 178, 187, 986 P2d 94 (1999) (OEC 412 is intended to protect against "unfair prejudice" by protecting victims of sexual crimes from the "degrading and embarrassing disclosure of intimate details about their private lives that might provide an improper basis for a juror to

weigh the credibility of a victim-witness or for making a decision in the case." (Quoting Legislative Commentary to Rule 412, *reprinted in* Laird C. Kirkpatrick, *Oregon Evidence* 202 (2d ed 1989))). We review the trial court's ruling on the latter issue for an abuse of discretion. *State v. Wattenbarger*, 97 Or App 414, 418, 776 P2d 1292, *rev den*, 308 Or 331 (1989).

The parties do not dispute that the challenged evidence constitutes evidence, not offered in the form of reputation or opinion evidence, of the victim's past sexual behavior. *See Muyingo*, 171 Or App at 222-24 (evidence of the victim's history—that she previously was allegedly raped by males other than the defendant—was evidence of the victim's past sexual behavior). We therefore turn to whether the evidence was admissible under the exception for evidence offered to rebut or explain scientific or medical evidence. OEC 412(2)(b)(B).

■ As an initial matter, we agree with defendant that a diagnosis of sexual abuse is scientific or medical evidence for the purpose of OEC 412(2)(b)(B). *Cf. State v. Sanchez-Cruz*, 177 Or App 332, 337-41, 33 P3d 1037 (2001), *rev den*, 333 Or 463 (2002) (a diagnosis of sexual abuse is scientific evidence subject to the foundational requirements for such evidence). *State v. Nab*, 245 Or 454, 421 P2d 388 (1967), and *State v. Wright*, 97 Or App 401, 776 P2d 1294, *rev den*, 308 Or 593 (1989), relied on by the state, are not to the contrary. *Nab*, a pre-OEC 412 case, involved an unrelated issue regarding the propriety of cross-examination regarding the victim's previous accusations of sexual conduct. 245 Or at 455-57. In *Wright*, this court determined that evidence that the victim was aware of sexual matters only because the defendant had abused her was not medical evidence for the purpose of OEC 412(2)(b)(B). 97 Or App at 407.

Nor is it significant, as urged by the state, that Reilly's diagnosis was not based on physical evidence of abuse, the context in which this court determined that evidence of the victim's past allegations of sexual abuse was admissible in *Muyingo*. 171 Or App at 221-23, 225. Reilly herself testified that a diagnosis of sexual abuse properly can be based on other factors, including the victim's history.

Accordingly, as in *Muyingo*, defendant generally was entitled, under OEC 412(2)(b)(B), to present evidence to rebut or explain that diagnosis.

In addition, the specific evidence at issue in this case was relevant for that purpose. As discussed above, in Reilly's testimony in the OEC 412 hearing, she repeatedly asserted the importance of patient history in the diagnostic process. Specifically, Reilly testified that "certainly you always look at past experiences of abuse," that it was "important" to "know what may have occurred to someone in the past" and to "know the details of a previous report" of sexual abuse, and that it was important to "differentiat[e]" past experiences from the current incident. Reilly testified that the one report she saw, relating to the victim's 2001 allegation, "alert[ed]" her to make sure that the victim was not "blurring or blending" that incident and the current incident in her mind. Finally, Reilly agreed that not having seen the reports of the victim's other allegations of sexual abuse meant that she had lacked information that might have been "significant" to her diagnosis. By the logic of Reilly's own testimony, the victim's previous allegations of sexual abuse had considerable relevance to the issue whether Reilly had correctly diagnosed the victim as having been sexually abused by defendant. Particularly in this case, where the absence of any physical or laboratory evidence meant that Reilly ultimately based her diagnosis of sexual abuse almost entirely on the victim's history, evidence of Reilly's inability or failure to consider the victim's previous allegations of sexual abuse was "necessary to rebut or explain" that diagnosis as provided in OEC 412(2)(b)(B). Defendant was entitled to examine Reilly regarding her knowledge of the victim's previous allegations and the extent to which she did or did not factor such allegations into her diagnosis.

■ We turn to whether the probative value of the evidence nevertheless was outweighed by its prejudicial effect. *State v. Beeler*, 166 Or App 275, 999 P2d 497, *rev den*, 331 Or 244 (2000), is exemplary. In that case, the defendant sought to admit evidence that the victim had consensual sexual relations with her boyfriend the day after the defendant allegedly raped her, in furtherance of his theory that the victim had consented to have sex with him. *Id.* at 277-79. The trial court

concluded that the evidence was admissible. On appeal, this court determined that the evidence was only marginally relevant to the defendant's theory of his defense and that, conversely, the value of the evidence for that purpose was outweighed by the state's interest in protecting victims of sexual crimes from having to make embarrassing disclosures regarding their personal lives. *Id.* at 285. We therefore reversed and remanded.

By contrast, in this case, in light of Reilly's own testimony regarding her diagnostic protocol, the challenged evidence was of significantly greater relevance and, hence, of significantly more probative value to defendant's defense. Conversely, although evidence that a child previously has made allegations of sexual abuse has the potential to embarrass the child, it arguably does not constitute the sort of embarrassing disclosure of intimate details of a victim's private life that were at issue in *Beeler*. On balance, the value of the evidence to the defense is not outweighed by its prejudicial effect. Accordingly, the trial court erred in excluding the evidence.

■ Finally, we address the state's argument that any error in excluding the evidence was harmless, that is, that there was little likelihood that it affected the verdict. *See* OEC 103(1) (evidential error is not presumed to be prejudicial but is reversible only where it affects a substantial right of a party); *State v. Keller*, 315 Or 273, 285-86, 844 P2d 195 (1993) (under OEC 103(1), the verdict shall be affirmed if there is little likelihood that the error affected the verdict). The state points to the victim's consistent and detailed statements throughout the investigation and prosecution of the case and the fact that the jury was able to assess her credibility at trial. The state also points to testimony by the victim's grandfather that defendant asked the grandfather to forgive him—although, as the grandfather testified, "there was nothing specific said about forgiveness for a specific thing."

In *Keller*, a CARES physician was one of four prosecution witnesses at the defendant's trial on child sexual abuse charges. The other witnesses were the child, the child's mother, and the deputy sheriff who had investigated the crime. 315 Or at 286. The defendant was convicted; on

appeal, he assigned error to the admission of a portion of the CARES physician's testimony. The Supreme Court determined that admission of the testimony was error. It therefore proceeded to consider whether the error was harmless and concluded that it was not. The court reasoned, in part, that the witness was "a medical doctor with extensive professional experience in the area of child sexual abuse," that she had "testified in an authoritative and detailed manner about that subject," and that her testimony "presumably was persuasive to the trier of fact" under circumstances where the child's credibility was important to the outcome of the case. Accordingly, the court could not say with certainty that there was "little likelihood" that the expert's testimony affected the jury's verdict. *Id.*

The same reasoning applies here. As in *Keller*, the victim in this case testified; in addition, in both cases, relatives of the victim testified in support of the victim's testimony. Nevertheless, analogously to the physician witness in *Keller*, Reilly was a health care professional with extensive experience in the area of child sexual abuse who testified in an authoritative manner regarding her credentials and her diagnosis of the victim. As in *Keller*, Reilly's testimony presumably was persuasive to the factfinder. Accordingly, we cannot say that the exclusion of evidence bearing on the issue of the accuracy and competency of Reilly's diagnosis had "little likelihood" of affecting the jury's verdict. For all the described reasons, defendant was entitled to examine Reilly regarding her knowledge of the victim's previous allegations of sexual abuse and the significance of those allegations to her diagnosis.

Reversed and remanded.